Jennifer Chang, Esq. (JC-5716)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFIT FUNDS and THE TRUSTEES THEREOF, | : : : | Hon. |
| | : | Civil Action No. 20- |
| Petitioners, | : : | **CIVIL ACTION** |
| v. | : : | **PETITION TO CONFIRM ARBITRATION AWARD AND** |
| INDUSTRIAL CONSTRUCTION OF NJ and INDUSTRIAL URBAN CORP., | : : | **ORDER AND FOR ENTRY OF JUDGMENT** |
| Respondents. | : : | |

Petitioners New Jersey Building Laborers' Statewide Benefit Funds ("Funds") and the Trustees thereof ("Trustees") (collectively, "Petitioners"), by their undersigned attorneys, as and for their Petition, allege and say:

1.    Petitioners move before this Court for an Order, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9 and 13 ("FAA"), confirming the award of the Arbitrator in the matter of the arbitration between Petitioners and Respondents Industrial Construction of NJ ("Industrial Construction") and Industrial Urban Corp. ("Industrial Urban") (collectively, "Respondents"), and directing that judgment be entered against Respondents, jointly and severally. This Petition is made on the following grounds.

2.      At all times relevant, the Funds were, and still are, trust funds within the meaning of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(d). The Funds are administered at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

3.      At all times relevant, the Trustees were, and still are, fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 USC § 1002(21)(A). The Trustees maintain their principal place of business at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

4.      Upon information and belief, at all times relevant, Industrial Urban was, and still is, a business entity registered to conduct business in New Jersey, with a principal place of business located at 833 Ewing Avenue, Lyndhurst, New Jersey.

5.      Upon information and belief, at all times relevant, Industrial Construction was, and still is, a business entity registered to conduct business in New Jersey, with a principal place of business located at 833 Ewing Avenue, Lyndhurst, New Jersey.

6.      The jurisdiction of this Court is based upon Section 502(e) of ERISA, 29 U.S.C. § 1132(e), 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Venue is proper in this District pursuant to 29 U.S.C. 1332(e)(2), because Petitioners maintain their principal offices in New Jersey and the underlying arbitration took place in New Jersey.

7.      At all relevant times, Respondents were and are signatory to a Collective Bargaining Agreement ("CBA") by virtue of duly executed Short Form Agreements ("SFA"). True and correct copies of the relevant portions of the CBA and the SFAs are attached hereto as Exhibits "A" and "B", respectively.

2

8.      In addition to the CBA, at all times relevant, Respondents have been bound to the Project Labor Agreement ("PLA") governing construction of the project commonly identified as Rector Street, located at 36-54 Rector Street, Newark, New Jersey ("Project"). The PLA expressly references the CBA and other trade agreements, and to the extent that their terms are consistent with those of the PLA, incorporates them. Pursuant to the PLA and the CBA, Respondents were obligated to pay certain contractual wages and benefits for covered work performed by their employees on the Project.

9.      Respondents are also bound by the Declaration of Trust of the New Jersey Building Laborers' Statewide Benefit Funds. A true and correct copy of the pertinent portions of the applicable Trust Agreement is attached hereto as Exhibit "C".

10.     The Trust Agreement provides that "[t]he Trustees may take any action necessary or appropriate to enforce payment of contributions, interest damages, and expenses provided for herein[.]" Under the terms of the CBA and Trust Agreement, Respondents is required to make contributions to the Funds. In accordance with the CBA and Trust Agreement, J.J. Pierson, Esq. ("Arbitrator"), has been appointed as the arbitrator to resolve claims of delinquent contributions owed to the Funds.

11.     After finding that Respondents were duly notified of the hearing, and considering all of the evidence presented in connection therewith, the Arbitrator issued an Award and Order in writing against Respondents ("Award"). A true and correct copy of the Award is attached hereto as Exhibit "D".

12.     Specifically, the Arbitrator found that:

- On or about November 21, 2018, the Funds settled Industrial Urban's then-reported

3

fringe benefit delinquency on the Project in the amount of $222,706.33 ("Gilbane Settlement"). As part of this settlement, the Funds released certain claims against Gilbane Residential Construction, Inc., the Construction Manager and Industrial Urban's higher-tiered contractor on the Project. *See* Award, p. 3, ¶ 1, thereof.;

- Subsequent to November 21, 2018, an additional $308,111.13 delinquency on the Project was reported to the Funds. This later reported delinquency was based on shop steward reports, as well as remittance reports and payroll documentation submitted by Respondents; and accounted for the Gilbane Settlement payment. *See id.*, p. 3, ¶¶ 2 – 3, thereof.;

- Subsequently, the Funds noticed Respondents that absent remediation of violations of their respective contractual obligations, this matter would be submitted to arbitration on April 23, 2019, pursuant to the CBA. *See id.*, p. 4, ¶¶ 5 – 6, thereof.;

- During the April 23, 2019 arbitration hearing, counsel for Industrial Construction appeared and acknowledged that: Respondents "were the same", and while Respondents started working on the Project as Industrial Urban, they finished working on the Project as Industrial Construction. Counsel further acknowledged Industrial Construction's liability for benefits owed on the Project, but requested a continuation to confirm the amount due. *See id.*, p. 4, ¶ 7, thereof.;

- On or about August 15, 2019, Funds' counsel met with Respondents' counsel and principal, and confirmed that the outstanding delinquency on the Project was $308,111.13. *See id.*, p. 4, ¶ 8, thereof.;

- During the continuation of the arbitration hearing on August 27, 2019, counsel for

Respondents acknowledged that $308,111.13 remained due and owing to the Funds. *See id.*, p. 5, ¶ 9, thereof.; and

- Respondents violated their respective contractual obligations by failing to remit to the Funds fringe benefit contributions in the amount of $308,111.13, on behalf of laborers performing covered work on the Project. *See id.*, p. 5, ¶ 1, thereof.

13.   Accordingly, the Arbitrator directed that Respondents pay forthwith all delinquent contributions, plus interest in the amount of $6,675.73. *See id.*, pp. 1 and 5, ¶ 2, thereof.

14.   The Award was duly served upon Respondents. Notwithstanding the Award, notice of same, and demand for payment, Respondents have failed and refused in all respects; and continue to fail and refuse in all other respects to comply with Award issued by the Arbitrator.

**WHEREFORE**, Petitioners pray for the following relief:

(a)   An Order confirming the Arbitration Award;

(b)   Entry of a judgment against Respondents, jointly and severally; or decree by the clerk which may be enforced as any other judgment or decree;

(c)   Costs of this petition and of all subsequent proceedings and disbursements including, but not limited to, court's filing fee in the amount of $400.00;

(d)   Costs, attorney's fees, and interest thereupon, as provided by law; and

(e)   Such other relief as the Court deems equitable.

**KROLL HEINEMAN CARTON, LLC**
*Attorneys for Petitioners*

/S/ JENNIFER CHANG

By: _____

JENNIFER CHANG

5

Dated:  April 16, 2020

# Exhibit A

# Collective Bargaining Agreement

### By and Between the

## New Jersey Building Construction Laborers' District Council
## Building and General Construction Laborers'
## Locals 3 & 77

### and

## Building, Site and General Construction
## Contractors and Employers

#### Effective

## May 1, 2016

Final 5.12.2016.0

1

# AGREEMENT

## Preamble

WHEREAS, this Collective Bargaining Agreement (hereinafter the "Agreement") is entered into by the undersigned Employer (hereinafter "Employer") and the New Jersey Building Construction Laborers' District Councils and Local Union 3 and 77 of the State of New Jersey (hereinafter the "Union"), and

WHEREAS, the New Jersey Building and Construction Laborers' District Council and Local Unions 3 and 77 of the State of New Jersey bound by this Agreement enter this Agreement individually and it is further understood that the liabilities of said District Council and Local Unions shall be several and not joint; and

WHEREAS, it is the purpose of this Agreement to build, develop and maintain a harmonious working relationship between the Employer and the Unions in which the rights of both parties are recognized and respected and the work is accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties,

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, BE IT AGREED AS FOLLOWS:

### Article I: Recognition and Scope of Agreement

**1.10    Union Recognition**
The Employer recognizes that the New Jersey Building Construction Laborers District Councils and Local Unions bound hereby represent a majority of employees of the Employer doing laborer's work in the State of New Jersey and shall be the sole bargaining representatives with the Employer for all employees employed by the Employer engaged in all work of any description set forth under Article II, Section 2.10, Work Jurisdiction, below.  The employer is satisfied and acknowledges that the Union has claimed and demonstrated that the Union has majority support and represents a majority of the employer's employees in an appropriate bargaining unit for the purposes of collective bargaining.  Accordingly, the Unions demand recognition and the employer recognizes the Unions as the exclusive bargaining agent under Section 9 of the NLRA for all of its employees within the contractual bargaining unit. The District Council and Laborer Local Unions bound hereby are:  New Jersey Building Construction Laborers' District Council and Building and General Construction Laborers' Locals 3 and 77.

**1.20    Good Faith Agreement**
The Employer shall in good faith live up to all the provisions of this Agreement.  The Union

2

obligates itself for all its members that they will in good faith live up to all the provisions of this Agreement. Acts of any individual member of the Union on his own initiative and without the authority of the Union shall not render the Union liable therefor, nor is the Union responsible for acts of unauthorized agents.

## 1.30   Scope of Agreement
The relationship of the parties is fully and exclusively set forth by this Agreement and by no other means, oral or written.

## Article II: Work and Territorial Jurisdiction

## 2.10   Work Jurisdiction
The Employers bound hereby recognize the Unions' claim to all jurisdiction as set forth in the Manual of Jurisdiction [October 1961] and in this Agreement as the same may relate to building, site and general construction in the State of New Jersey and the parties hereto agree to cooperate in the proper assignment of work jurisdiction as set forth herein to the construction laborers.

**Tenders:**   Multi-Trade Tenders tending masons, plasterers, carpenters and other building and construction crafts.
Tending shall consist of preparation of materials and the handling and conveying of materials to be used by mechanics of other crafts, whether such preparation is by hand or any other process. After the material has been prepared, tending shall include the supplying and conveying of said material and other materials to such mechanic, whether by bucket, hod, wheelbarrow, buggy, power buggy, or other motorized unit used for such purpose, including all fork lifts of any description or type, including all telehandlers, including roto-type telehandlers, with or without stabilizers, whether using pallet forks, buckets, work platforms or other attachments, and wheresoever used, conveyors, portable wire hoists, elevators, Bobcats, and all similar machinery, and the loading, unloading and handling of all materials onto such devices, where used in connection with masonry, concrete, demolition, cleanup, moving and stacking of materials, or other work performed by Laborers

Unloading, handling and distributing of all materials, including sheetrock, paneling, ceiling tile and assemblies, windows, door bucks, metal studs, finished and rough lumber, finished cabinetry, and all fixtures, furnishings and appliances, crated or uncrated, from point of delivery to stockpiles and from stockpiles to approximate point of installation. The unloading and loading of trucks and freight cars at the site.

The moving of all furniture, crated or uncrated, new or old, in a building under construction or renovation, including the loading and unloading and the distribution and erection of furniture on a job or project, and the removal of packing debris and other trash

The unloading and handling, including all hooking, unhooking, placement and signaling, of all concrete plank, sills, coping, and other concrete building materials, including precast, post, pre-stressed, and preformed concrete in any form, and all brick panel together with all similar building and construction materials prepared off-site which replace materials, methods or work formerly done on-site by any trade that was tended by laborers, at the job site.

The aging and curing of concrete, mortar, epoxy and other materials applied to walls, floors,

3

ceilings and foundations of buildings and structures, highways, airports, overpasses and underpasses, tunnels, bridges, approaches, viaducts, ramps or other similar surfaces by any mode or method, except where otherwise assigned to a heavy construction laborers local union.

The cutting of masonry where sledge, mechanical or pneumatic hammers are used. Operation of all hand, pneumatic, electric, motor, combustion, or air-driven tools, concrete saws or equipment necessary for the performance of work described herein, including forklifts, rollers, wackers (with or without levers), vibrators, concrete saws regardless of type (self propelled or manual), gunite nozzle and machine workers, power rollers, combination tamper and vibrator, power wheel barrows and buggies, and all other equipment, including all Bobcats (with or without accessories), used to do work once done by laborers.

**Cleanup:** Cleaning and clearing of all debris, including wire brushing of windows, scraping of floors, removal of surplus material from all fixtures within confines of structure and cleaning of all debris in building and construction area, including all cleanup after all other trades which cleanup shall not be performed by any other trade or the apprentice of any other trade.

The general cleanup, including sweeping, cleaning, washing down and wiping of construction facilities, equipment and furnishings and removal and loading or burning of all debris including crates, boxes, packaging waste material. Washing or cleaning of siding of any type, walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein.

Clean-up, vacuuming, mopping, washing, waxing and polishing or dusting of all floors, surfaces or areas whether by hand or machine. Final cleanup of all types and any description on all projects, including but not limited to industrial, office, residential and retail projects.

**Water Removal:** The dewatering of all construction sites and/or the removal of drainage or other water from construction sites or areas. The handling, transportation, fueling, refueling and cleaning of pumps, foot valves, and hoses and all engineers' equipment and the attaching of the same, and the installation, driving and servicing of all well points, wick drains and any other dewatering system.

**Weather and Other Temporary Protection:** The installation, dismantling, adjusting of panels, windbreaks and/or temporary enclosures or other weather protection devices whether they be canvas, synthetic or other material of any configuration and for any purpose. The removal or treatment of snow or ice at the jobsite.

All temporary protection of floors or any other surface by any method or material including plywood, cardboard, masonite, homosote, paper, plastic, sysilcraft, etc.

**Temporary Heat:** Drying of plaster, concrete, mortar or other aggregate, when done by salamander heat or by temporary heating units or any other drying process of any type or description. The heating of all buildings under construction where any form of temporary heat is used, including salamanders and megaheaters, regardless of fuel or power source, and the placing, setup, lighting, refueling, servicing, maintenance, manning and removal of all such heaters.

**Scaffolds:** Erection, planking and removal of all scaffolds of all types, including mast climbing scaffolds and all platforms, runways, ramps and putlock scaffolds, for lathers, plasterers, bricklayers, masons and other construction trades crafts. Building, planking or installation and removal of all staging, swinging and hanging scaffolds, including maintenance thereof. Where self-supporting scaffolds or staging over fourteen feet in height or specially designed scaffolds are built by Carpenters, Laborers shall tend said Carpenters on erection thereof; the dismantling of said scaffolds, as well as preparation for foundation or mud-sills for said scaffolds and maintenance of same shall

4

be done by Laborers, together with all transportation and stockpiling of dismantled scaffold equipment, planks and materials.

**Masonry Scaffolds:**  With reference to the Masonry Contractors, the laborers will do the entire erection and dismantling of all scaffolds.  The aforesaid jurisdiction is provided by the International Agreement between the Mason Contractors Association of North America, Incorporated and the Laborers' International Union of North America, executed as of January 6, 1955 and amended November 1, 1979, a copy of which is incorporated by reference and made part hereof.

**Excavations and Foundations, Site Preparation and Clearance, Transportation and Transmission Lines**: Excavation for building and all other construction; digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, cofferdams, dams, dikes and irrigation trenches, canals, and all handling, filling and placing of sand bags connected therewith.  All drilling and scaling on the site, including areas adjacent or pertinent to construction site; installation of temporary lines.

On-site preparation for clearance for construction of any structures where the same are constructed within the property lines of the building project. Clearing and slashing of brush or trees by hand or with mechanical cutting methods.  Falling, bucking, yarding, loading or burning of all trees or timber on construction areas.  Choker setters, off bearers, lumber handlers and all laborers connected with on-site portable sawmill operations connected with clearing.  Erection, dismantling and/or reinstallation of all fences.  Clean-up of job sites, including tying on, signaling, stacking of brush, trees or other debris, and burning where required.  All soil test operations of semi and unskilled labor, such as filling of sand bags, handling timber and loading and unloading of same.

All grading of top soil by any method, seeding by hand, device or machine, whether power or manual, all landscaping, and the planting of all trees, shrubs, bushes, ornamental and other plants of any description.

The operation of total station theodolites (TST), including remote control and GPS units, for site, concrete and masonry layout, after the surveyor has set the benchmarks and offsets.

**Concrete, Bituminous Concrete and Aggregates:**

(a)    Concrete, bituminous concrete, or aggregates for walls footings, foundations, floors or for any other Construction.  Mixing, handling, conveying, wheeling, ramming, spreading, leveling, pouring, vibrating, guniting and otherwise placing concrete, cement mortar, or aggregates, whether done by hand or any other process.  All types of handling and distribution of all ready-mixed concrete. Wrecking, stripping, dismantling and handling concrete forms and false work whether constructed of wood, aluminum or other material.  Building of centers for fireproofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, Diesel or electric power.  When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping, and unhooking the bucket.  Placing of concrete or aggregates, whether poured, pumped, gunited, or placed by any other process, including the operation of Line Dragons or similar systems.  The assembly, uncoupling of all connections and parts of or to equipment used in mixing or conveying concrete, aggregates or mortar, and the cleaning of such equipment, parts and/or connections.  All vibrating, grinding, spreading, flowing, puddling, leveling and strike-off of concrete or aggregates by floating, rodding or screeding, by hand or mechanical means, including the setup, operation, maintenance, dismantling, and moving of any and all automatic or self-leveling or similar concrete leveling machines, prior to finishing.  Where pre-

5

stressed or pre-cast concrete slabs, sill, coping, concrete plank, walls or sections, including brick panels, or other preformed concrete in any form, whether steel reinforced or not, are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections.  All mixing, handling, conveying, placing and spreading of grout for any purpose.  Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

(b)     The filling and patching of voids, crevices, etc., to correct defects in concrete caused by leakage, bulging, sagging, etc.

(c)     The loading, unloading, hoisting, carrying, distributing and handling of all rods, mesh and material for use in reinforcing concrete construction.

(d)     All work on interior concrete columns, foundations for engine and machinery beds.

(e)     The stripping of forms, other than panel forms which are to be re-used in their original form, and the stripping of forms and panels in their entirety, where the forms are not to be reused on the same job for the same purpose and the stripping of all flat arch work and the replacing of all shoring or supports and the stripping of all footing forms.  The moving, cleaning, oiling and carrying of all forms to the next point of erection.  The cleaning of all materials before leaving a job shall be the work of the laborers.  The jacking of slip forms, and all work connected therewith.

(f) The snapping of wall ties and removal of tie rods.  All sandblasting, including the handling, placing and operation of the nozzle, hoses and pots or hoppers on sandblasting or other abrasive cleaning and the maintenance, moving, setting up, servicing, supplying, storage, and all aspects of the operation of all sandblasting equipment of all types and descriptions for any purpose.

(g) Bushing and other preparation of concrete surfaces.

(h) Polishing of concrete floors.  Sealing of concrete and grout.

**Drivit Systems.**  All aspects of the installation and application of drivit-type systems.

**Fireproofing.**  The mixing of all intumescent, gypsum plasters, fibrous plasters, cementitious and other fireproofing coatings regardless of the means of application.  The layout of hoses for spraying fireproofing coatings onto surfaces, clean up of overspray and masking of spray areas, and the spray application of fireproofing coatings onto surfaces, and the cleaning and maintenance of all equipment.

**Sidewalks and Curbs**: Work in the excavation, preparation, the grading and landscaping of all sidewalk and curb areas, regardless of material used, and the concreting of all such areas, and all semi-skilled and unskilled labor connected therewith.

**Underpinning, Lagging, Bracing, Propping and Shoring:** Underpinning, lagging, bracing, propping and shoring, raising and moving of all structures; raising of structure by manual or hydraulic jacks or other methods.  All work on house moving, shoring and underpinning of structures; loading, signaling, right-of-way clearance along the route of movement.  Resetting of structure in new location to include all site clearing, excavation for foundation and concrete work. Clean-up and back-filling, landscaping of old and new sites.

**Drilling:** All work of drilling, jack hammering. Operation of all rock and concrete drills, including handling, carrying, laying out of hoses, steel handling, installation of all temporary lines.  All high scaling and other rock breaking and removal after blast.

**Signal Men:** Signal men on all construction work defined herein, including traffic control signalmen at construction sites.  When concrete or aggregates are conveyed by crane or derrick or similar

6

methods, the hooking on, signaling, (whether in the open or in the blind) dumping and unhooking of the bucket. Where wrecking is done by ball, all signaling shall be done by a laborer.

On all jobs where hoisting engines are in use, a Laborer shall act as bell-man. He shall load and unload the hoist and give bell signals for the raising and lowering of the hoist.

On all jobs where elevators are in use, the ringing of bells and use of radio communicators or telephones. When machines are in use for excavation, backfilling, grading or other purposes, the guiding and directing of such machines.

**General Excavation and Grading:** The clearing, excavating, filling, back-filling, grading and landscaping, planting and seeding of all sites for all purposes and all labor connected therewith, including chainmen, rodmen, grade markers, etc.

**Wrecking:** The wrecking, deconstruction or dismantling of buildings and all structures, including interior demolition and selective or controlled demolition. Handling of all dismantled materials and debris to be recycled or salvaged. Breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams. The operation and maintenance of all hydro-demolition equipment. Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. All hooking on and unhooking and signaling when materials for salvage or scrap are removed by crane or derrick. All loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards in connection with cutting, cleaning, storing, stockpiling or handling of materials. All clean-up, removal of debris, burning, backfiring and landscaping of the site of wrecked structure. Where wrecking is done by ball, all signaling shall by done by a laborer. The dismantling, removal or demolition of all ductwork and HVAC equipment not to be reused on the job site, and the handling and removal of all disconnected ductwork and HVAC equipment from the area to disposal areas. The handling, transportation and stockpiling of all disconnected ductwork and HVAC equipment which is to be reused is to be done by laborers.

**Use of Tools:** Operation and maintenance of all hand, pneumatic, electric, motor, combustion or air-driven tools or equipment necessary for the performance of work described herein. Mechanized equipment including Bobcats used for grinding, finishing, demolition, clearing, excavating, foundation trenching, or other trenching, filling, backfilling, finish grading, planting, seeding, and the restoration of all sites will be performed and the equipment maintained by laborers. Pumps shall be manned by laborers. Where new tools or equipment are introduced into the area which do work formerly done by laborers, the new tools or equipment are to be handled, maintained and operated by laborers.

**Remote Controlled Equipment:** The operation of all remote controlled equipment of any type, whether tethered, wireless, or GPS controlled, used in masonry, concrete, demolition, excavation, cleanup, moving or stacking of materials, including Line Dragon and Brokk-type machines, used in connection with work performed by or assigned to Laborers.

**Hazardous Materials:** The demolition and removal of all hazardous materials from buildings and the decontamination of all tools, equipment and vehicles used at such sites, including but not limited to asbestos, toxic waste, etc.

**Solar Projects:** The unloading, handling and distribution of all materials from point of delivery to storage or point of installation whether by hand or motorized unit; excavation and digging of trenches, foundations, footers and holes; digging , sheeting, cribbing, bracing, and proppig of

foundations, footers, holes, caissons and trenched; mixing, handling, conveying, spreading, leveling, pouring, vibrating, guniting or otherwise placing concrete, cement, mortar or aggregates, whether done by hand or any other process; installation of pre-stressed or pre-cast concrete slabs, concrete planks, walls or sections or other preformed concrete in any form; conduit work; installation, bracketing, ballasting, and tethering of solar racks and the installation of solar panels onto racks.

**Miscellaneous:** All yardmen, watchmen, guards, flagmen, the manning and servicing of all tool rooms, tool sheds, material storage and distribution points, warehouse workers, cleaners, debris handlers, water boys, material yards, junk yards, asphalt plants, concrete products plants, and all maintenance work and work of skilled, semiskilled and unskilled nature. Where a Laborer is assigned as a safety man wages and benefits shall be paid in accordance with this Agreement.

 **Other Work:** All such work and jurisdiction as may have been acquired by reason of amalgamation or merger with former national or international unions and as may be hereafter acquired; including all such work and jurisdiction as declared by actions of the Executive Council or conventions of the American Federation of Labor.

All such other work as may be assigned by the Employer where such assignment is accepted by the Union, as well as any work jurisdiction now exercised by the Unions or described in the Manual of Jurisdiction (Part I) of October, 1961.

 Where the employer is not under agreement with another trade to perform work not otherwise included in this Agreement in connection with masonry, concrete, demolition, fireproofing, excavation, site work, cleanup, material moving, or other work, such assignment shall be offered to the Laborers and, if accepted, an appropriate wage rate shall be agreed to.

## 2.20    Jurisdictional Disputes

It is agreed between the Union and the Employer that this Agreement is applicable to all construction work that is described in this Agreement or the Manual of Jurisdiction of the Laborers' International Union of North America, which is incorporated herein by reference and any other work within the recognized and traditional jurisdiction of the Union and shall be performed in accordance with the terms of this Agreement. If the Union is aggrieved over any assignment to employees represented by a LIUNA affiliate, the matter shall be referred to the regional office of both contesting Unions in an effort to seek a resolution. If the matter fails to be satisfactorily resolved in this manner within three business days, the parties agree to submit the matter to the New Jersey State Board of Mediation for binding arbitration on an expedited basis. Any party that fails to abide by and cooperate with this expedited procedure shall be deemed to be in default and an order shall be entered by the Arbitrator in favor of the opposing party. Pending an orderly resolution of the matter, there shall be no interruption of work by a work stoppage, strike or refusal to refer men to the project by the Union.

## 2.30    Territorial Jurisdiction

This Agreement is effective and binding on all jobs in the State of New Jersey upon the execution of the same by the Employer and any building and construction laborer local union bound hereby. However, no amendment to this contract will be effective as against the unions bound hereby on a statewide basis unless specifically approved in writing by the Laborers' International Union of North America, Eastern Region office, as representative of the District Councils and local unions bound by this Agreement.

### Article III: Union Security and Hiring

**3.10    Union Security**

All employees who are present members of the Union shall maintain their membership in good standing in the Union in order to continue in employment.  All new employees, on the eighth (8) day following the beginning of their employment, or the execution of this Agreement, or the effective date of this Agreement, whichever is later, shall become and remain members in good standing of the Union in order to continue in employment, all to be applied and enforced in accordance with the provisions of the National Labor Relations Act as amended.  Upon notice by the Union to the Employer, any employee who fails to become or remain a member of the Union in good standing shall be terminated.  Initiation into the union on or after the eighth day is within the discretion of the union.  Nothing in this section shall permit an employer to hire a laborer except as provided in Article 3.20 or 3.30 below.

**3.20    Hiring**

(a)    In consideration of the foregoing, the Employer agrees to give the Union first opportunity to furnish laborers and apprentices to the Employer upon his request, and provided that notice of such requirement is given to the Union's Business Manager, or his representative on the job, twenty four (24) hours before the men are needed, stating the number of men needed, the skills required, the time and location of the job, the Union agrees to fulfill the Employer's requirements for laborers.  If the territorial Local Union is unable to supply the laborers within twenty four hours, then the Employer may employ laborers from other Building Laborer Local Unions from other territories in the District Council.   In the event that the Employer is unable to secure its requirement of laborers as hereinbefore set forth, then the Employer may hire from any source.  In any event, no laborer shall be employed 1) who is not a journeyperson who has been employed in the bargaining unit, set forth in Section 1.10 for at least eight days, and who is a member in good standing, pursuant to Section 3.10, of a local union signatory to this Agreement or 2) who has not either first been accepted into the New Jersey Construction Craft Laborers' Apprenticeship Program or exempted therefrom by the Apprentice Coordinator in accordance with that program's rules and regulations.  Any laborer hired in violation of this Article shall be terminated.

(b)    The Employer shall refer any union laborer who directly solicits the Employer for work to the Local Union hiring hall.

**3.30    Stripping**

Where an Employer recruits a prospective employee from a non-union employer and desires to add him or her to his regular work complement as a laborer, the Employer must first, in writing, advise the Union (1) of the prospective employee's name, address, telephone number, and social security number, (2) itemize the skills the prospective employee is thought to possess, and (3) identify the non-union employer(s) for whom the prospective employee has worked.  Upon review, if the Local Union Business Manager agrees to a try-out hiring, which agreement is within his sole discretion, the Employer may put the prospective employee to work for a period not to exceed seven days.  If at the end of such trial period both the Union and the Employer agree that the employee will make a good laborer, a suitable application to the Apprentice Coordinator shall be made for an exemption.  If the

9

exemption is denied, the employee shall be terminated. This provision shall only apply to persons having one or more of the skills of a Class A laborer. Any employee accepted under this provision shall complete the 30 Hour OSHA Safety Training Course within three months of the granting of the exemption. If the person fails to complete the course within the time frame allowed, he or she shall be terminated from employment by the Employer. During the try-out period, all wage, checkoff and fringe benefit provisions of this Agreement shall be enforced. Any person hired for a try-out without the prior agreement of the Business Manager shall be immediately terminated by the Employer.

**3.40    Replacement Laborers**
When an Employer has in his employ a laborer who is scheduled for training at the Building Laborers training facility, or other training facility affiliated with LIUNA, such laborer will be permitted to attend the training. The local union shall provide and the Employer shall accept a replacement laborer for the time the regular laborer is at the training facility. Upon completion of the training, the regular laborer shall return to his position with the Employer, if it still exists, and the replacement laborer shall be returned to the hall, if not needed by the Employer. Laborers acting as replacement laborers shall not be charged with a referral by the local union under its hiring hall rules.

**3.50    Employer Cooperation in Workforce Improvement**
To implement the LIUNA Code of Performance adopted by LIUNA, the Employer agrees to designate discharges "for cause," when appropriate and to substantiate such cause if necessary in proceedings under the Code of Performance. This clause is intended only to assist the Union in implementing its Code of Performance, and a worker's only rights there under are in connection with future referrals under the Union's hiring hall procedures. This clause does not create any new or additional rights whatsoever for workers under this Agreement, including not creating any new or additional right to reinstatement with or without back pay from the Employer.

**3.60    Non-Discrimination**
The Union and the Employer agree to abide by all Executive Orders and subsequent amendments thereto regarding the Civil Rights Act of 1964, American Disabilities Act, and the New Jersey Law Against Discrimination, pertaining to non-discrimination in employment on account of race, color, creed, national origin, political belief, sex, LBGT status, age or disability in every respect, and all other applicable state and federal laws and regulations.

**3.70    Job Notification**
All Employers shall provide notification of a job start to the Local Union where a project is located prior to the start of its work on the project. General Contractors shall advise the Local Union of all subcontractors scheduled to perform work within this Agreement at the jobsite and shall also require those subcontractors to give notice at the commencement of their work.

**Article IV: Management Rights**

**4.10    Statement of Management Rights**
(a)    The Employer retains full and exclusive authority for the management of his own operations.

10

The Employer may utilize any method or techniques of construction and the Employer shall decide the amount of equipment to be used and the number of men needed.

(b)    If there is any conflict between this Article and any rights, benefits or conditions which are provided for in this Agreement, the said rights, benefits or conditions set forth in this Agreement shall prevail.

(c)    The Employer shall be the sole judge of the work performed and whether or not the work is performed satisfactorily by the workers.  The Employer shall have the right to discharge any unsatisfactory workers.

**4.20    Establishment of Workplace Rules and Regulations**

Employees shall observe the Employer's rules and regulations, not inconsistent with this Agreement, which shall be posted at the project provided said rules are reasonable and submitted to the Union at least ten (10) days in advance for prior approval.  Said approval shall not be unreasonably withheld.

## Article V: Union Rights and Activities

**5.10    Non-Discrimination Against Union Members and Officers**

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his acts as such officer of the Union, nor shall there be any discrimination against any employee because of union membership or activities.

**5.20    Job Site Visitation and Inspection**

Authorized agents of the Union shall have access to the Employer's construction site during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, and ascertaining that the Agreement is being adhered to, provided however, that there is no interruption of the firm's working schedule and such visitation does not conflict with an owner's security requirements.  In addition, at the request of the Union, the Employer shall promptly provide the Union with the names, addresses, telephone numbers, Local Union affiliation, and social security number of any employees performing laborers work at a jobsite.

**5.30    Picket Lines**

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to go through any lawful primary picket line of another Union and including lawful primary picket lines at the Employer's places of business.

## Article VI: Work Rules and Job Conditions

**6.10    Work Rules and Job Conditions**

The following work rules and job conditions shall apply to all jobs and work sites:

(a)    Workmen shall leave their designated shanty at the starting time and shall remain at their place of employment until quitting time.

11

(b)     There shall be no limit on production on workers nor restrictions on the full use of tools or equipment. There shall be no restrictions, other than may be required by safety regulations, on the number of men assigned to any crew or to any service.

(c)     Slow downs, standby crews and featherbedding practices will not be tolerated.

(d)     There shall be no illegal strikes, work stoppages or lockouts.

(e)     It is agreed that overtime is undesirable and not in the best interests of the industry or craftsmen.   Therefore, except in unusual circumstances, overtime will not be worked.   Where unusual circumstances demand overtime, such overtime will be kept at a minimum.

(f)     The Employer shall supply on the job all tools required in performing work covered by this Agreement including raingear and pull over boots. The Employer shall provide appropriate masks to laborers slacking lime and safety gloves, goggles, and other equipment as needed to ensure minimum risk of harm to the workers. The Employer will keep clean and replace or repair all such clothing and equipment as needed. Each laborer shall supply his own hard hat.

(g)     The Employer shall furnish a suitable shanty for the exclusive use of the laborers where the laborers can eat lunch and be sheltered in bad weather.  The shanty shall be heated in cold weather, shall be kept clean and sanitary, and shall not be used for the storage of tools or materials. The job steward and foremen shall be given a key for the shanty.

(h)     The Employer shall provide a portable Johnny, on the spot latrine or other toilet facility, and adequate clean up facilities, on the job site.  The Johnny and clean up facilities shall be kept clean and sanitary at all times.

(i)     The Employer shall provide clean drinking water and sanitary drinking cups for all laborers. In warm weather the water shall be kept cold with ice.

(j)     The Employer shall provide first aid kits and all required safety equipment on the job, which equipment shall be properly maintained at all times. The job steward and foremen shall be informed as to the storage location of said equipment and be given keys to said location.

(k)     When a job is not otherwise being worked, for safety reasons the Employer shall employ two laborers to man temporary heat.

(l)     Employees covered hereunder shall have the privilege to partake of some non-alcoholic beverage at the approximate mid-point of the work period prior to the meal break on any shift. Where any other trade receives a beverage break during the portion of the work day following the meal break, the laborers shall also be allowed a beverage break.  Any post-meal beverage break shall occur at the approximate mid-point of the work period following the meal break on any shift. Beverage breaks shall not exceed ten (10) minutes.  The beverage shall be delivered to each person at his post of work by the Job Steward or some other person who the Job Steward and the Employer agree upon.  There shall be no unnecessary congregating during these beverage breaks.  In the event that this privilege is abused, by mutual agreement between the Employer and the Union, this privilege may be suspended.

(m)     All laborers shall be allowed five (5) minutes of clean up time before the thirty (30) minute meal period and at the conclusion of the day.

(n)     If the Employer moves a laborer from one jobsite to another jobsite, the  Employer shall require the laborer to check in with the other job's Job Steward when he or she arrives a the new site, or, if there is no job steward at the site, the Employer shall immediately report the move to the local union having jurisdiction over the job site.  When laborers are moved from one job site to another

job site in the course of a day they shall travel from one site to the other site during company time. No laborer will travel from one site to the other site while on his meal break.

(o) The Employer shall provide liability and collision insurance coverage for the vehicle of any laborer who uses his personal vehicle in connection with the project.  This insurance shall be the primary coverage for the vehicle at all times it is so used.  Use in connection with the project shall not include commuting to and from the project.

(p) The Employer shall carry workers' compensation, unemployment compensation and temporary disability insurance and all other legally required insurance on every job and the Business Manager of the local union may require proof of the same at any time.  No laborer may be required to work for any Employer that does not provide such insurance.

**6.20 Job Site Safety**

(a) All Employers shall be required to carry out their work in a manner so as to provide for the safety of the men from the danger of faulty scaffolding, improper bracing, inferior materials, or a careless or faulty method of working that may endanger the safety of laborers on the job.  All Employers shall conform to all applicable provisions of the Construction Safety Code for the State of New Jersey and all applicable provisions of the Occupational Safety and Health Act laws and regulations.

(b) It is the Employer's exclusive responsibility to provide a safe and healthful workplace for all workers covered under this Agreement and the Union does not assume responsibility for the same.

(c) The Union, its officers, employees, agents and representatives shall not be liable for any injuries, disabilities or diseases arising from or relating to the work covered hereunder or the job sites where such work is performed.

(d) The Employer and the Union members waive any cause of action against the Union, its officers, employees, agents and representatives, for any injuries, disabilities, or diseases arising from or relating to the work covered hereunder or the job sites where such work is performed.

(e) The Employer indemnifies the Union, its officers, employees, agents and representatives, and holds them harmless from any liability, damages, settlements, and legal fees and costs arising out of any work related injuries, disabilities, or diseases to any worker arising from or relating to the work covered hereunder or the job sites where such work is performed.

(f) All employees accepting a referral to a project where the employer or owner mandates drug testing or a criminal history background check, where such testing or background check is paid for by the owner or employer and required of all other employees, shall submit to, permit and cooperate with such testing or background check.  Such testing or background checks shall be performed in an industry standard manner and the results thereof shall be confidential. The Union shall have the right to review the procedures used and any objections thereto shall be resolved expeditiously.

(g) In the referral to jobs, laborers otherwise having the skills required for a position who have a 30 hour OSHA Construction Safety certification shall be given first preference for referral by the hiring hall.  Next preference shall be given to those with a 10 hour OSHA Construction Safety certification and last preference shall be given to those without either certification.  Laborers shall take any refreshers required by the New Jersey Building Laborers Training and Apprenticeship Program in a timely manner to maintain their eligibility for referral.

(g) The Associations and Building Trades have committed to establishing a standard Drug and

13

Alcohol Policy and Testing Program by the end of this Agreement which, when adopted, shall become part of this Agreement.

## Article VII: Job Stewards

### 7.10    Appointment of Job Steward

(a)      On every job where laborers are employed by an Employer bound to this Agreement there shall be a laborer Job Steward employed by the Employer who shall be a member of the territorial local union where the job is located.  No laborer shall be permitted to work without a Job Steward.

(b)      The Job Steward shall be appointed by the Business Manager in his sole discretion and the Business Manager shall be the sole judge as to the Job Steward's performance of his duties as Steward.

(c)      The Job Steward shall not be discharged except upon a showing of good cause and without 24 hours prior notice to the Business Manager.

(d)      The Employer shall ensure that a working Job Steward is on all projects where laborers' work is being performed by the Employer or a subcontractor of the Employer, provided, however, that the Employer shall not be required to employ a Job Steward when there is no laborer's work as described in Article II above to be performed at the project.

(e)      Failure to hire or improper discharge of a Job Steward designated by the Union on a project where there is laborer's work being done shall be deemed an open breach of this Agreement and the Union may employ any remedy allowed by law, including job actions, to correct the breach.

### 7.20    Job Steward Authority

Job Stewards have no authority to take strike action, or any other action interrupting the Employer's business except as authorized by official action of the local union.  The Employer recognizes these limitations upon the authority of the Job Steward and shall not hold the Union liable for any unauthorized acts.

### 7.30    Job Steward Responsibilities

(a) It shall be the duty of the Job Steward to see to it that the provisions of this Agreement are being fully carried out on said job.

(b)  The Employer shall give the Job Steward sufficient time to perform his duties and the Job Steward shall not be discriminated against for doing so.  The Job Steward shall be given sufficient time to complete his Shop Steward Report on payday during working hours and, on request, shall provide the Employer with a copy of his report.

(c)  On the request, the Employer shall promptly provide the Job Steward with the names, addresses, social security numbers, local union affiliation, and telephone numbers of any workers in the Employer's employ doing laborers' work.  Furthermore, the Job Steward shall be provided the opportunity to secure properly executed dues and NJSLPAC authorization forms from any employees doing laborers' work, including any laborers permitted to work in the jurisdiction from other local unions.

(d)  The Job Steward shall have the right to inspect the laborers' payroll prior to its distribution to confirm that the required wage standards are being adhered to.

14

In the case of breach of any of the provisions of this Agreement the Job Steward shall immediately contact the Business Manager or Business Agent of the local union so that the Business Manager or Business Agent may make an attempt to amicably adjust the dispute with the Employer.

**7.40    Working Job Stewards**
All Job Stewards shall be working Job Stewards. There shall be no non-working Job Stewards.

**7.50    Certified Job Stewards**
(a) A Job Steward who has satisfactorily completed the (1) thirty-hour OSHA Construction Safety and (2) First Aid/CPR and (3) Scaffold User and (4) Lead Renovator courses, together with any additional courses or refreshers required by the Union, shall be classified a Certified Job Steward.
(b) Certified Job Stewards, their training being a benefit to the Employer, and as compensation for completing records of hours worked for the fringe benefit funds due contributions under this Agreement, shall be paid $.75 per hour over the Class A Rate or over the rate for the classification in which he is working, whichever is higher.

### Article VIII: Foremen
**8.10    Foremen**
The first foreman and all general foremen at any jobsite shall be selected and assigned by the Employer in the Employer's discretion from its regular work complement. If additional foremen are needed, then the Employer shall give the local union first opportunity to refer foremen qualified for the type of work required. If the local union does not have qualified foremen to refer, then the Employer may assign a foreman from his regular complement of workers. All foremen shall be employees employed in the bargaining unit set forth in Section 1.10 and members in good standing, pursuant to Section 3.10, with a local union signatory to this Agreement.

**8.20    Foreman Rate of Pay**
(a)    A laborer foreman shall be paid at a rate equal to an additional one hour of pay for each eight hours of pay. A general foreman shall be paid at a rate equal to an additional two hours of pay for each eight hours of pay. For purposes of calculating these rates, the Class A laborer's rate shall be used. Overtime for foremen and general foremen shall be paid based on the foreman or general foreman pay rate calculated as set forth above, as may apply.
(b)    All foremen and general foremen shall be guaranteed forty hours per week at the foreman or general foreman pay rate, as may apply, until the conclusion of the job. If the job is temporarily halted, the foreman or general foreman will be paid the full forty hours for the week of the interruption; if the job is concluded, the foreman or general foreman shall be paid until the last day he works.
(c)    Foremen and general foremen shall be guaranteed forty hours of benefits per week. More than forty hours shall not be paid unless such time in excess of forty hours was actually worked.

## Article IX: Hours, Overtime, Shifts and Holidays

**9.10    Standard Work Day**

(a)      There shall be a uniform eight hour day with starting and quitting times between the hours of 6:00 a.m. and 6:00 p.m. Alternatively, the Employer may establish a regular four ten-hour day work schedule for a project from Monday through Thursday with each such work day beginning and ending between 6:00 a.m. and 6:00 p.m.

(b)      Laborers shall be paid not less than eight hours for each day or part thereof worked, except as follows: When an Employer call laborers to work on a Saturday where Saturday is a time and one-half rate day, Sunday or Holiday, and the laborers begin work but work four or fewer hours, the laborers shall be paid for not less than four hours at the applicable rate. If the laborers work more than four hours, then the laborers shall be paid not less than eight hours. On days terminated due to inclement weather, the laborers shall be paid for the actual time worked in accordance with this Agreement.

(c)      Said schedules shall be established by the Employer at the beginning of the job in a pre-job conference with the local union Business Manager and shall apply for the duration of the project except that the schedule may be adjusted with the consent of the Business Manager upon one week's notice.

(d)      On every shift all laborers will be allowed a thirty minute meal break which shall commence not sooner than three hours after the beginning of the shift not later than three hours before the scheduled end of the shift.

**9.20    Split Starting Times**

An Employer may establish split starting times as part of a regularly scheduled work day. If an Employer chooses to split the starting times of laborers, laborers who report for work shall be guaranteed two hours pay and must remain on the project for said two hours, unless released by the Employer sooner. If the Employer puts the laborers to work on a delayed basis due to weather or other conditions, the laborer shall be paid for all time from the beginning of his scheduled start time. Where the Employer establishes split starting times for a project, both crews must begin and complete their scheduled work days between 6:00 a.m. and 6:00 p.m.

**9.30    Shift Differential**

(a)      The parties to this Agreement recognize the desirability of coordinating the shifts to be worked with the other trades involved in a project and the customer's work schedule. If the Employer determines that shift work is necessary, the following schedule shall prevail:

(b)      When a two shift schedule (including a day shift) is established the first or day shift shall be established on an eight hour basis. The second shift shall be established on an eight hour basis and be paid the hourly rate for the classification plus 10%.

(c)      When a three shift schedule is established the following conditions shall prevail. The day shift shall be established on an eight hour basis, the second shift shall be established on a seven and one-half hour basis and the third shift shall be established on a seven hour basis. The first shift shall receive the hourly rate for the classification. The second shift shall receive the hourly rate for the classification plus 10%. The third shift shall receive the hourly rate for the classification plus 15%.

16

(d)     When there is no day shift and a second shift or third shift is established the following conditions shall prevail. The second shift shall be established on an eight hour basis. The third shift shall be established on an eight hour basis. The second shift shall receive the base hourly rate for the classification plus 10%. The third shift shall receive the base hourly rate for the classification plus 15%.

(e)     When an irregular shift must be established, a 10% premium above the hourly rate for the classification shall apply to all hours worked outside the permissible starting and quitting times.

(f)     All time worked before or after a regularly established shift shall be paid at the applicable overtime rate. Split starting times may not be used on any project where multiple shifts are utilized.

(g)     The percentage premium, when added to the base rate, shall be termed the regular hourly rate. Shift hours for the second and third shifts shall be such as to conform to the day shift and in no case shall an employee work on more than one shift in a 24 hour period.

(h)     To qualify as a shift outside of the 6 AM to 6 PM day, the hours must be regularly scheduled for not less than five consecutive work days. Work days outside of the 6 AM to 6 PM work day that are worked for less than five consecutive work days shall not be considered shift work subject to the differential and shall be paid at time and one-half or double-time, as applicable.

## 9.40    Overtime

(a)     All hours worked beyond an eight hour day shall be paid at a rate of time and one-half the applicable rate of pay except where a four-ten work schedule is in effect, in which case all hours worked Monday through Thursday in excess of ten hours shall be paid at a rate of time and one-half.

(b)     All hours worked on a Saturday shall be paid for at the rate of time and one-half with the exception of make-up days. Hours worked on Sunday and holidays shall be paid for at the rate of double time.

(c)     Overtime on Make-up Days shall be controlled by the Make-up Day provisions set forth in this Agreement.

## 9.50    Holidays

(a) The following holidays are recognized under this Agreement: New Year's Day, President's Day, Memorial Day, Independence Day, Labor Day, Veterans Day, Thanksgiving day, Christmas day, Presidential Election days. Any holiday falling on a Sunday shall be celebrated on Monday.

(b) The Employer and the Unions agree that establishing Martin Luther King Day as a contract holiday is desirable. If the Employer chooses to honor Dr. Martin Luther King before such time as the holiday is recognized by the Building Trades as a contract holiday, the Employer may celebrate Martin Luther King Day as an unpaid holiday and not work on that day. If the state or area Building & Construction Trades Council requests that Employers working within its jurisdiction celebrate Martin Luther King Day as a holiday, then the Employer hereto signatory shall comply with such request and not schedule work for that day, unless it conflicts with an owner mandate for the project. If an Employer bound to honor the holiday under this section works then laborers will work too and holiday pay will apply. In the event that the ACCNJ agrees with any other trade it has collective bargaining agreements with to recognize Martin Luther King holiday as a holiday under this Agreement, then such holiday will thereafter be recognized as a holiday under this Agreement.

(c) For weeks with a holiday, the Employer may employ a 4-10 hour work week, Monday through

17

Friday.

### 9.60    Make-up Day

(a)    When, during the course of a normal work week of eight hour days from Monday through Friday, 32 hours or less are worked strictly due to weather conditions or as otherwise mutually agreed by the Union and the Employer, the employing contractor has the option of working Saturday for 8 hours at straight time.

(b)    When, during the course of a normal work week of eight hour days from Monday through Friday, 36 hours or less are worked strictly due to weather conditions, the Employer shall have the option of working 8 hours on Saturday for straight time up to 40 hours and the applicable overtime rates for all time over 40 hours.

(c)    Where a four ten-hour day schedule is established on a job, and 36 hours or less are worked due strictly to weather conditions or holiday, Friday may be used as a make-up day for such hours lost at straight time up to 40 hours and the applicable overtime rates for all time over 40 hours.

(d)    The following conditions must be met and satisfied for this Article to become effective:

    1. The sole reason for the loss of hours during the normal work week must be weather conditions.

    2. Only those laborers who were employed during the work week of 32 hours or less on the project where the Employer is requesting a make-up day shall be eligible to work the make-up day. The Employer shall not be allowed to bring laborers from other sites which are not working on a project utilizing a Saturday make-up day.

    3. Foremen shall be paid for all hours worked on a make-up day in addition to his forty hour guarantee at straight time up to forty hours actually worked, with the applicable overtime rate being paid thereafter

    4. All laborers employed on a project opting for a make-up day must be offered the opportunity to work on the make-up day.

    5. It is not mandatory for a laborer to work on a make-up day and it is at their choice and discretion.  No negative actions or retribution shall occur against any laborer who opts not to work a make-up day.

    6. The make-up day hours shall be paid in the same pay period as the Friday preceding the make-up day.

    7. The Business Agent of the local union shall be notified as soon as the Employer decides to utilize a make-up day and must concur with its appropriateness, which concurrence shall not be unreasonably withheld.

### 9.70    Paid Sick Leave

All employees covered by this Agreement waive their rights for paid sick leave provided by any state statute, county or city or local ordinance.

## Article X: Wages and Fringe Benefits

**10.10   Classifications of Laborer**
There shall be three classifications of laborer.  In addition to the three classifications below, the Associations and Union agree that, on or before November 1, 2016, Labor and Management will develop a Master Mason Tender Classification, rate and referral and/or hiring rules as to when the Master Mason Tender classification is to be applied, and to establish criteria and training programs to further advance the knowledge, skills, and abilities that the parties deem necessary for this classification.  The conditions, requirements and rates adopted by the parties shall become part of this Agreement and all signatories hereto shall be bound thereby.

**10.20   Class A Laborers**
Class A Laborers shall be a specialist classification that includes all laborers working on mason tending crews and concrete crews, including Laborers engaged in the construction, dismantling or stripping and cleaning of forms, or as foremen, scaffold builders, burners, nozzlemen on gunite work, or who operate the jack hammer, tamper, motorized tampers and compactors, vibrators, riding motor buggy, conveyors, street cleaning machines, hydro-demolition equipment, and all types of forklifts or bobcats (or equivalent machinery).  Foremen shall be paid in accordance with Article VIII hereof.

**10.30   Class B Laborers**
Class B shall be the basic laborer's rate and includes all work not included in Class A or Class C.

**10.40   Class C Laborers**
Class C laborers are laborers doing janitorial-type light clean up work associated with the turnover of the project or part of a project to the owner, and all flagmen, watchmen, fire watch personnel, and those manning temporary heat of all types.

**10.50   Partial Day Work in Classification**
Where, at the contractor's request, a laborer is sent to a job site to perform Class A work, that laborer shall be paid the Class A rate for not less than the first eight hours of his employment with the Employer or until his discharge if he is employed by the Employer for less than eight hours.  Where a Class B laborer performs two or more hours of Class A work in the course of a work day then that laborer shall receive the Class A rate for the full day.  Where a Class B laborer performs less than two hours of Class A work in a work day, then that laborer shall receive his regular rate of pay for the day. Class C laborers may not perform Class A or Class B work unless they are paid the applicable Class A or Class B rate for the full day.

**10.60   New Work Classification**
(a)      If in the term of this Agreement, mechanized changes or changes in the method of operation, or changes in the assignment of existing tasks not previously performed by the Laborers, result in different or new types of work, the Building Contractors Association of New Jersey and the

19

Laborers' International Union of North America, Eastern Region office as a representative of Building and Construction District Councils and Local Unions of the State of New Jersey agree to discuss the same and mutually agree on such work's proper classification.

(b)       The Employer recognizes the Construction Specialist, Masonry Specialist and Concrete Specialist classifications which classifications shall include all such tasks as are assigned by the Employer and accepted by the Unions and approved by the Laborers' International Union of North America, Eastern Regional Office.

(c)       Laborers working in a Specialist classification shall be paid $3.40 per hour over the A Rate.

## 10.70  Wage and Fringe Benefit Package

(a)       Effective May 1, 2016 the total basic laborer (Class B) wage/fringe package shall be to $57.37.

(b)       Effective November 1, 2016 the total basic laborer (Class B) wage/fringe package shall be increased to $58.37.

(d)       Effective May 1, 2017 the total basic laborer (Class B) wage/fringe package shall be increased to $59.27.

(e)       Effective November 1, 2017 the total basic laborer (Class B) wage/fringe package shall be increased to $60.42

(f)       Effective May 1, 2018 the total basic laborer (Class B) wage/fringe package shall be increased to $62.27.

(h)       Class A laborers shall receive $.50 more per hour than Class B laborers receive.

(i)       Class C laborers will receive the standard fringe benefit package (except where a Market Recovery Agreement is in effect setting another rate) and a wage rate equal to 85% of the Class B wage rate.

(j)       When bricklayers receive double time for hot work associated with firebrick, laborers working with the bricklayers shall receive double time as well. One hundred (100) degrees Fahrenheit or over shall constitute hot work. When laborers are employed on excessive hot work, the contractor shall provide the proper counter fatigue aids which shall meet the standards prescribed by the governing state or federal agency, and shall provide proper gloves, shoes, and protective materials to safeguard laborers when they are handling hot work, and contractors shall be responsible for shoes or clothing which they burn in the performance of hot work. Laborers must spell each other on all hot work.

(k)       Fringe Benefit Payments. Fringe benefit contributions shall be due on all hours paid for all work assigned to a laborer by the Employer. On overtime, Sunday and Holiday time paid, fringe benefits shall be paid at time and one-half. Benefits shall be paid on behalf of all persons performing work covered by this Agreement, regardless of union membership. The Employer may not at any time pay benefits in the envelope to any employee performing work covered by this Agreement. Neither benefits nor checkoffs shall be due on any lump-sum bonus paid to any laborer, or for holidays paid but not worked, or for any paid vacations. The Employer shall clearly mark any such payment as a bonus, paid but not worked holiday or vacation, in his records and shall have the burden of demonstrating that the payment was a bona fide bonus, paid but not worked holiday or vacation. There shall be a presumption that a bonus is not bona fide if there is more than one bonus given in a calendar year.

(l)     Upon the request of the union, the employer shall complete and submit prevailing wage surveys to applicable state and federal agencies.

## 10.80   Wage and Fringe Benefit Allocation effective 5/1/2016

| | |
|---|---|
| Class B Wage | $30.80 |
| Welfare | $11.50 |
| Pension | 8.75 |
| Annuity | 4.90 |
| Training | 1.07 |
| LECET | .30 |
| Health & Safety | .05 |

| | |
|---|---|
| Checkoffs: | |
| LEROF | $   .40 |
| NJSLPAC | .20 |
| Working Dues | 3.75% of the Class B package for journeypersons |
| | 3.75% of the Step 1 apprentice package for apprentices |

(or as otherwise authorized by the Union)

Wage and Benefit allocations for increases after May 1, 2016 shall be determined by the Unions in the future. In addition, the Unions reserve the right to reallocate the wage and fringe benefits for any year under this Agreement or under a Market Recovery Agreement if they deem such reallocation necessary.

## Article XI: Payment of Wages

### 11.10   Procedure for Payment of Wages

Employees shall receive their wages in cash or by check, on the job. The pay envelope (if paid in cash) or check shall be plainly marked as to the employee's name, the hourly rate, number of hours and the deductions for various taxes and check off items. The envelope shall show the net amount of wages and the Employer's name and address. The employees shall be paid prior to the end of the established weekly pay day, or an earlier day if the regular pay day falls on a recognized holiday when the banks are closed. Two (2) days back pay may be withheld by the Employer.

### 11.20   Payment by Check

Employers may pay wages by check unless the Employer has had paychecks not honored by their bank, in which case the union may require payment by cash or certified check.

### 11.30   Payment of Wages for Waiting and Travel Time

Where laborers are not on the job, for any reason for which the Employer is not responsible, when the paymaster is paying off the laborers, they may be sent to the main office for their pay, but without any allowance for the time spent in going to and from the office; but where the laborers are not on the job for any reason for which the Employer is responsible, they will be allowed one hour with pay in going to the office for their pay.  Where Laborers are no paid on the specified pay day they shall be paid single time for all waiting time at the rate of eight (8) hours per day not to exceed sixteen (16) hours.

## 11.40   Payment on Layoff or Cancelled Workday

(a)      A laborer shall be notified of his layoff at the end of the workday.  The Employer shall overnight the laborers' layoff check to the Local Union on the same day as the layoff so as to arrive the next business day.  The laborer shall receive two additional hours pay at straight time for each additional business day the layoff check is late, except where the layoff check was overnighted on time but was delivered late through no fault of the Employer.

(b)      When an Employer directs a laborer to report for work and the laborer reports for work but is not put to work that day for reasons other than inclement weather or other circumstances beyond the Employer's control, he shall be paid one day's pay at straight time.

( c)      In the event that the Carpenters or the Bricklayers receive show up time, then the Laborers shall receive show up time on the same basis.

## 11.50   Payment on Quitting or For Cause Termination

(a)  Where a laborer quits the job the Employer shall pay all money due to the employee on the next regular pay day.

(b)  Where a laborer is terminated for cause by the Employer and the Employer provides the Union with a Notice of Termination pursuant to Article III, Section 3.50 hereof, or other written statement of the reason for the termination, the Employer shall pay the laborer only for the actual time worked rounded up to the next quarter hour on the next regular pay day.  If the Employer specifically states that it does not want the employee referred to it in the future then the Union will not refer the employee to the Employer in accordance with such request.

## 11.60   Partial Hour Pay

Any laborer working a fraction of any hour during regular working hours or shift shall receive a full hour's pay at the applicable hourly rate of pay.  Any overtime work performed shall be paid for to the nearest half-hour at the applicable overtime rate.

## 11.70   Payment for Owner or Employer Mandated Pre-employment Physicals

Where an owner or employer mandates pre-employment physicals of all applicants, the laborer applicant shall comply with the mandate provided that the owner or employer pays the expense of the physical and pays the laborer-applicant for his actual time in taking the same at straight time with benefits, and that he is provided the results of the physical.

22

**11.80   Payment for Owner or Employer Mandated Pre-employment Drug Tests**
Where an owner or employer mandates pre-employment drug test of all applicants, the laborer applicant shall comply with the mandate provided that the owner or employer pays the expense of the drug test and pays the laborer-applicant for his actual time in taking the same at straight time with benefits, except that when the laborer-applicant's drug test results are unsatisfactory and he is not hired, then no wage or benefits will be paid, subject to the laborer-applicant's right to appeal the test outcome.  If the outcome is successfully appealed then the wages and benefits will be paid.

**11.90   Fringe Benefit Payment Bond**
The trustees of the pension and welfare benefit fund, or a designated administrator thereof, may require the Employer to post a bond not to exceed $500,000 with a reputable surety to secure payment of all sums due or to become due to the several funds created or maintained under this Agreement.

**11.95   Non-Payment of Wages or Fringe Benefits, Breach of Contract**
Notwithstanding anything to the contrary in this Agreement, it is agreed that if the Employer fails to pay wages as agreed upon herein or to submit reports and proper contributions to the benefit funds as required, then such failure shall be deemed an open breach of this Agreement, not requiring arbitration, and the Union shall have the right to call a strike or work stoppage against said Employer until the breach is corrected.

## Article XII: Apprenticeship

**12.10   Joint Apprenticeship and Training Committee**
The parties agree to continue to maintain a Construction Craft Laborer Apprenticeship Program.  The Joint Training and Apprenticeship Committee established by the parties in accordance with Apprenticeship Standards previously adopted by the committee shall have the authority to set, administer and enforce all rules, regulations, ratios and rates for apprentices and the apprenticeship program.

**12.20   Apprentices**
The Employer shall participate in the apprenticeship program by accepting apprentices for employment upon referral by the Union.  The Employer is required to accept an apprentice, provided there is work for such apprentice, once five journey workers are employed.  The Employer may, however, employ one apprentice for the first journey worker employed and no more than one additional apprentice for each additional three journey workers employed.  An apprentice shall not work on the jobsite unless supervised by a journey worker.  The referral of apprentices to any employer is a matter of discretion residing with the Local Union and JATC acting through the Apprentice Coordinator.

An apprentice should, whenever possible, be rotated by the Employer through different types of work so as to become trained in a variety of operations and work skills.  Where the Employer is unable to provide an apprentice with experience in the full range of craft skills, the JATC may request the

23

Local Union to reassign the apprentice to other employment in order to provide the experience. For so long as the Employer is able to provide the necessary range of employment experience, the Employer may choose to retain the apprentice from job to job throughout the state, but shall notify the Local Union and JATC of all reassignments. It shall be the objective of both the Employer and the Union to make reasonable efforts to keep apprentices working so that they can complete the apprentice program and become journey workers in a reasonable amount of time.

An apprentice shall not be penalized for taking off from work to attend offsite training required by the JATC (although time off for training shall be unpaid).

**12.30  Apprentice Ratio.**
(a)  Subject to availability, this Agreement shall allow an apprentice ratio as follows:   The first laborer after the job steward may be an apprentice, except where there is a foreman, in which case the third laborer employed may be an apprentice. Thereafter, there may be one apprentice for every three journeypersons employed on the job.
(b)  Where a Market Recovery Agreement is in effect the apprentice ratio may be adjusted in accordance with said Agreement.

### Article XIII: Portability

**13.00  Portability.**
The Employer, provided it has notified the local union in advance of the start of the project that the project was to begin and is otherwise in compliance with this Agreement and is not delinquent to the benefit or checkoff funds established hereunder, shall be allowed liberal portability of key employees subject, however, to the territorial local union's right to fair representation in the Employer's workforce for the project. Key employees are laborers who have worked for the Employer in the bargaining unit set forth in Section 1.10 for at least eight weeks in the previous six months and who are members in good standing, pursuant to Section 3.10, of a local union signatory to this Agreement.

### Article XIV: HUD Section 3 and Local Hire Requirements

**14.00  HUD Section 3 Requirements and Similar Local Hire Provisions**
Where a contract is subject to HUD Section 3 local resident hiring provisions, or where a public PLA or local ordinance requires such local resident hiring, the employer and the Unions will cooperate so as to permit the employer to comply with such hiring requirement. On work subject to HUD Section 3 requirements regarding new hires the Union will allow new hiring as follows:

| | |
|---|---|
| 1st hire: | Union |
| 2 | Resident |
| 3 | Union |
| 4 | Union |
| 5 | Union |
| 6 | Resident |

24

| | |
|---|---|
| 7 | Union |
| 8 | Union |
| 9 | Union |
| 10 | Resident |
| 11 | Union |
| 12 | Union |
| 13 | Resident |
| 14 | Union |
| 15 | Union |
| 16 | Union |
| 17 | Resident |
| 18 | Union |
| 19 | Union |
| 20 | Resident |

(continue 3 Union/Resident/2 Union/Resident pattern for larger crews)

Where the required ratio is different than that required by Section 3, the parties shall implement a hiring schedule based on the above format.

Bargaining Unit Laborers shall be given preference over residents for overtime. Residents shall be laid off before Bargaining Unit Laborers referred by the Union. The Union shall be given first opportunity to refer Bargaining Unit Laborers who qualify as residents and members so qualifying shall be counted as resident new hires.

**14.10       Benefits on Local Hire Workers**
Benefits shall be paid to the Statewide benefit funds on all hours worked by residents/local hire workers.

## Article XV: Fringe Benefit Funds

**15.00   Pension and Welfare Funds Sustainability**
The parties agree and recognize that the Pension and Welfare Funds must be sustainable for the union construction industry to prosper and pledge to support fund trustee efforts to both protect the benefits of laborer participants in these funds and employer competitiveness by improving the efficiency and sustainability of these funds.

**15.05   New Jersey Building Laborers' Statewide Pension Fund.**
All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the New Jersey Laborers' Statewide Pension Fund which will be administered in accordance with the applicable trust agreement.

**15.10   New Jersey Building Laborers' Statewide Welfare Fund.**
All Employers bound by this Agreement shall contribute such amount as has been allocated by the

parties to the New Jersey Laborers' Statewide Welfare Fund which will be administered in accordance with the applicable trust agreement.

**15.20   New Jersey Building Laborers' Statewide Annuity Fund**.
All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the New Jersey Laborers' Statewide Annuity Fund which will be administered in accordance with the applicable trust agreement.

**15.30   New Jersey State Political Action Committee**
All Employers bound by this Agreement shall deduct such amount as has been authorized from each employee's pay who signs an authorization for the New Jersey State Political Action Committee fund. Each Laborers Local will be responsible for obtaining the signatures for these authorizations and for notifying the appropriate Employers which employees have authorized the political check off. Employers shall be responsible for getting signed authorization cards from laborers in their employ who are not members of the Locals signatory hereto. Employers shall forward checkoff contributions to the fund as the specified rate in the same manner as they contribute to the fringe benefit funds established or maintained pursuant to this Agreement.

**15.40   Working and Organizing Dues Checkoff**
All Employers bound by this Agreement shall deduct such amount from each covered employee's wages for Organizing Dues and Working Dues as has been authorized by the District Councils and/or Local Unions bound hereto. Organizing Dues shall be forwarded to the Laborers' Eastern Region Organizing Fund and Working Dues shall be forwarded to the appropriate local union or district council in the same manner as the Employer contributes to the fringe benefit funds established or maintained pursuant to this Agreement, or as otherwise directed by the district council signatory hereto. Each Laborers Local will be responsible for obtaining the signatures for these authorizations and for notifying the appropriate Employers which employees have authorized the working and organizing dues check off. Employers shall be responsible for getting signed authorization cards from laborers in their employ who are not members of the Locals signatory hereto.

**15.50   Laborers'-Employers' Cooperation and Education Trust**
All Employers bound by this Agreement shall pay such amount as has been allocated by the parties to the Laborers'-Employers' Cooperation and Education Trust which will be administered in accordance with the applicable trust agreement. Employers shall contribute to this trust as the specified rate in the same manner as they contribute to the other fringe benefit funds.

**15.60   New Jersey Laborers' Health & Safety Fund**
All Employers bound by this Agreement shall pay such amount as has been allocated by the parties to the New Jersey Laborers' Health & Safety Fund which will be administered in accordance with the applicable trust agreement. Employers shall contribute to this trust as the specified rate in the same manner as they contribute to the other fringe benefit funds.

**15.70   Building Laborers' of New Jersey Training and Education Fund**

All Employers bound by this Agreement shall pay such amount as has been allocated by the parties to the Building Laborers' of New Jersey Training and Education Fund which will be administered in accordance with the applicable trust agreement. Employers shall contribute to this trust as the specified rate in the same manner as they contribute to the other fringe benefit funds.

**15.80   Associated Construction Contractors Association of New Jersey Industry Advancement Fund**
(a)      All Employers covered by the terms of this Agreement shall pay to the Associated Construction Contractors Association of New Jersey, its successors or assigns, hereinafter referred to as the "ACCNJ", the sum of fifteen cents ($.15) per hour..
(b)      Payments to the ACCNJ are due and payable at the same time and in the same manner as the N.J. Building Laborers Training and Education Fund and shall be reported on the same remittance forms as are used by the Building Laborers Fringe Benefit Funds throughout the State of New Jersey
(c)      In consideration of the promises and obligations of the Employers to make contributions to the ACCNJ, and in consideration of services to be directly and indirectly provided for such employers by the ACCNJ, as determined by the ACCNJ, and for the benefit of the construction industry generally, and for other good and valuable consideration, such consideration being specifically acknowledged by each employer signatory to this Agreement, each Employer agrees to all of the provisions of this Article and acknowledges that said contractual provisions were made for the express, direct and exclusive benefit of the ACCNJ, a third party beneficiary under this Agreement, an Independent Agreement or any other form of agreement or understanding with any Employer for work covered under this Agreement for the term of this Agreement.

**15.90   Due Date for Contribution Payments into Funds**
(a)      Contributions for funds established or maintained under the Agreement shall be paid within three days of the end of the weekly payroll period. Biweekly or monthly payments may be allowed in the discretion of the trustees or administrators of such funds where the Employer complies with such requirements as the trustees or administrators may set as a condition for biweekly or monthly payments. All such payments shall be made on properly prepared remittance forms prescribed or acceptable to the funds. Contributions to the training fund, LECET, NJH&S and all check-off funds shall be made in the same manner as other payments due under this Agreement.
 (b)      For purposes of this Article any payment not received on or before the applicable due date set forth hereinabove shall be considered delinquent.


**Article XVI: Collection of Amounts Due Under Agreement**

**16.10   Right to Strike and Picket for Delinquencies**
If the Union is advised by any benefit or other fund created or maintained under this Agreement that an Employer is delinquent in contributions to the same, or if the Employer is delinquent in the payment of wages to its laborer employees, then the employees and the Union shall have the right to strike and/or picket until the wages, benefit or other fund contributions are paid in full, anything in this Agreement to the contrary notwithstanding. Where a delinquency is due from a subcontractor of

the Employer for a project in another local union's territory, the local union where the ongoing project to be struck or picketed shall give the Employer five days written notice before commencing the job action.

If any employee loses employment because of any strike or picketing to protest the failure to make such payments, the Employer shall be responsible to pay all wages and benefits for the time lost. Except for the foregoing the Union and the employees shall have the right to picket for non-payment of wages only when the same are not paid as required on the regular pay day.

### 16.20   Legal Remedies for Collection of Delinquencies
The Trustees or Administrators of any fund due contributions pursuant to this Agreement shall be entitled all rights accorded by law including but not limited to the right to demand, receive, sue for, and take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy that may be necessary or desirable in their discretion to effectuate the payment and collection of any sum or sums and costs required to be paid to the Welfare, Pension, Annuity Funds or other funds or entities under this Agreement.

### 16.30   Costs of Collection
(a)      In addition to the other provisions of this Agreement relating any such funds, in the event the Employer is delinquent in the payment of contributions to the Funds, or wages, the delinquent Employer shall also be required to pay attorneys' fees and court and arbitration costs, if any, whenever the services of an attorney or arbitrator are necessary to recover the amount due. The Union or the Trustees may also assess the Employer interest and other costs.
(b)      The Attorneys' fees shall be as follows:

| WITHOUT SUIT OR ARBITRATION | WITH SUIT OR ARBITRATION |
|---|---|
| 20% of the first $750.00 | 27 ½% of the first $750.00 |
| 15% over $750.00 | 22 ½% over $750.00 |
| (Minimum $15.00 each fund) | (Minimum $25.00 each fund) |

(c)      All disbursements and expenses including arbitration fees are additional.  The foregoing shall apply unless changed by the Board of Trustees of any particular Fund.
(d)      In addition to the above, the fund or funds, as the case may be, may further assess a delinquent Employer for any and all collection costs, court costs, audit costs, attorneys' fees, telephone and correspondence costs, etc., which the fund or funds incur in collecting or attempting to collect the delinquent payments from the Employer.  The Employer shall be required to pay collection costs, audit costs, interest, liquidated damages and attorneys' fees irrespective of whether or not litigation is commenced.  The Employer shall also pay interest on the amount due but interest may be waived in the discretion of the trustees of the affected funds.

### 16.40   Protection of Benefits
(a)      Failure on the part of the Employer to pay the benefit fund contributions required pursuant to this Agreement for each and all of the employees covered by this Agreement shall impose upon

28

the Employer sole and full responsibility to assume the benefits of the employee(s) and their family(s) are entitled to from such funds.

(b)      The Employer agrees that, after the termination date of the Agreement, he will continue to make contributions to the benefit funds when employing laborers covered hereunder pending the negotiation of a new agreement.  The Employer or the ACCNJ may terminate the obligation set forth under this provision by giving written notice to the Laborers' International Union of North America, Eastern Region office, as representative of the the local unions and district councils bound hereunder, of its intention to do so and the effective date thereof.  All such notices shall be sent by certified mail and may not be effective until received.

## 16.50    Fund Rights and Duties

(a)      The Trustees of the benefit funds shall have such rights and duties as set forth in the Plans and in the Agreements and Declarations of Trusts and any supplements or amendments thereto, all of which are incorporated herein by reference.

(b)      The Employer agrees to join and concur with the Union in the execution of such petitions, applications, and forms that are required to be filed with the state and federal governmental agencies.

(c)      The Employers agree that the trustees of the fund or funds shall have the right to require such reports by the Employers as are necessary to the fulfillment of the agreements and declarations of trusts and the contracts of insurance, as may apply.  The trustees and insurers shall also have the right to inspect at all reasonable times the payroll, employment and such other records of the Employer as are pertinent to questions of the accuracy or comprehensiveness of the reports of the Employer.  In the event that the Employer fails to permit said inspection and/or fails to present adequate records, the trustees have the authority to determine an amount due by averaging the hours contributed in the prior three years, or such other method as is reasonably calculated to approximate the amount due provided the method used is not arbitrary and capricious.  The trustees' right to conduct an audit of the employment and other records of an employer which has properly terminated this Agreement for the period under which it was bound thereby shall continue for a period of two years after such termination.  Costs as set forth in Article XV, Section 15.30 and the trust documents shall be applied as to any delinquency found in such audit.  The period subject to audit shall be limited to the period for which the employer was bound to this Agreement, and/ or its predecessor.

(d)      In any event where an Employer is or has been delinquent in the payment of contributions to one or more of the funds established or maintained hereunder the Union and or the trustees shall have the power to require such Employer to post a reasonable cash bond to secure the Employer's future full and prompt compliance with the requirement for such contributions.

## Article XVII: Contractor Liability for Delinquency

## 17.10    Contractor Liability for Delinquency of Sub-Contractor

If the Employer subcontracts any work covered by this Agreement to any subcontractor or other person, the Employer shall be liable for all contributions owing to the funds established or to be established hereunder in the event the subcontractor or person fails to pay contributions to the said funds for employees covered by this Agreement employed by the said subcontractor or person.

29

**17.20   Employer/Subcontractor Assignment of Payments**

If the Employer is or a becomes delinquent in the payment of any contributions to any funds established or to be established hereunder directly or by way of its responsibility for subcontractor contributions pursuant to Article 16.10 hereof, the Employer hereby assigns and transfers over all rights, title, and interest in all monies due it from the owner, construction manager, general contractor, any other contractor, or any governmental agency, to the said funds in the amount up to the sum due to the funds. Upon notice by the funds to the owner, construction manager, general contractor, other contractor, or governmental agency, the said owner, construction manager, general contractor, other contractor, or governmental agency shall immediately remit to the funds the amount claimed to be due to the funds. The amounts claimed to be due shall be immediately paid and, if any dispute arises over the amount paid and a refund is alleged to be due to the Employer, the matter may be submitted to arbitration. The funds liability in such case shall be limited to such refund and shall not include any consequential, special, punitive or other damages. The provisions of this Section do not limit the Employer's liability for subcontractor contributions under Article 17I.10 hereof.

### Article XVII: Subcontracting

**18.10   Subcontractors to Become Signatory to Agreement**

The Employer agrees that all contractors or subcontractors who are engaged by the Employer to perform work of the kind covered by this Agreement at the site of construction, alteration, painting, demolition, asbestos removal, hazardous waste removal, or repair of a building, structure, or other construction work shall be or shall become a signatory to this Agreement. Furthermore, the Employer agrees to require to all subcontractors to use laborers represented by the Union for all cleanup work at the project. The Employer will be responsible for all losses incurred by the employees or the Union in the event he subcontracts to a subcontractor who fails to execute this Agreement. The purpose of this Article is to preserve the job opportunities and work jurisdiction of employees covered by this Agreement.

**18.20   Preservation of Bargaining Unit Work**

In order to protect and preserve work for the employees covered by this Agreement and to protect the benefits to which employees are entitled to under this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work and benefits, it is agreed that when the Employer performs any work of the type covered by this Agreement at any work site (1) under its own name, or (2) under the name of another entity (whether a corporation, company, partnership, joint venture, or any other business entity) where the Employer, including its owners, stockholders, officers, directors, or partners, exercise either directly or indirectly (such as through family members or company employees) any significant degree of ownership, management or control, the terms of this Agreement shall be applicable to all such work.

Either the Union or an affiliated benefit fund or funds may bring a grievance pursuant to this provision. The Employer shall cooperate fully with any inquiry initiated by the Union or funds and shall permit counsel to the Union or funds full access to all of its corporate records to determine

whether the Employer has violated this provision. In the event that an arbitration or court action is brought by the Union or funds based on a violation of this provision and the Union or funds prevail in whole or part, the Employer, including its owners, stockholders, officers, directors, or partners, exercising, any significant degree of ownership, management or control over another entity performing the work, shall be liable, in addition to any lost wages or benefits, for all of the Union's or funds' court costs, arbitration, legal, accounting, and all other professional and investigative fees or expenses.

## Article XIX: Transfer of Company Title or Interest

**19.10    Agreement Binding on Successor Companies**
(a)      This Agreement and any supplemental Agreements hereto, shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an operation or a company is sold, leased, transferred or taken over by sale, transfer, lease assignment, receivership or bankruptcy proceeding, such operation or successor employer shall continue to be subject to the terms and conditions of this Agreement for the life thereof.
(b)      It is understood by this Section that the parties hereto shall not use any device to a third party to evade this Agreement. The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the work covered by this Agreement or any part of thereof. Such notice shall be in writing with a copy to the Local Union at the time the seller, transferor, or lessor executes a contract or transaction as herein described. The Local Union shall also be advised of the exact nature of the transaction, not including financial details. In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Local Union, and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the bona fide purchaser, the transferee or lessee has agreed to assume the obligations of this Agreement.

## Article XX: Extra Contract Agreements

**20.10   Extra-Contract Agreements With Employees Barred**
The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such agreement shall be null and void.

## Article XXI
## [Reserved]

## Article XXII: Arbitration and Grievances

**22.10   Jurisdictional Disputes**
Jurisdictional disputes are not covered under this Article but are covered under Article II, Section 2.20 above.

31

## 22.20   Arbitration Procedure

(a)       In the event an Employer unjustifiably fails to pay wages or fringe benefits when due, the Union has the absolute right to strike and picket the delinquent individual contractor, in addition to the following procedure.  Economic hardship shall not be justification for nonpayment.

(b)       All questions or grievances involving the interpretation and application of this Agreement, including matters of substantive arbitrability and whether this Agreement exists, or any grievance concerning any term or condition of work, other than trade jurisdictional disputes arising under Article II, shall be handled under the following procedures:

Step I       There shall be a meeting in person or by telephone between the Business Manager of the Union or his designee and an authorized company representative. The meeting shall be arranged as soon as practicable       b in no event later than seven (7) working days.

Step II       If the controversy is not settled pursuant to Step II either party may then submit the matter within ten (10) working days to the permanent arbitrator appointed by the trustees of the Statewide Pension and Welfare Fund.  Only the Union or the Employer may submit a dispute to arbitration.

(c)       The Arbitrator shall render his decision in writing on the grievance and solely on the meaning and interpretation of the particular provision of the contract which gave rise to the dispute.

(d)       The Arbitrator shall have the authority to decide all disputes arising under this Agreement including all matters of procedural and substantive arbitrability and whether an Agreement exists between the parties.

(e)       The Arbitrator shall have no power to add to, subtract from, or modify this agreement.

(f)       The parties affected shall be afforded a full opportunity to present any evidence, written or oral, which may be pertinent to the matter in dispute.

(g)       The time requirements herein are not jurisdictional and may be relaxed where non-compliance therewith does not materially prejudice either party and is in the interests of justice.

(h)       In the interest of uninterrupted progress on any and all work covered by this Agreement, the parties hereby agree that there shall be no strikes, work stoppages, picketing or slow downs engaged in by the Union, except as otherwise set forth in this Agreement.

(i)       This article shall not limit the rights of the Trustees of the funds herein from establishing arbitration procedures as permitted under the Declaration of Trusts, plan documents or the law.

## Article XXIV: Separability and Savings Clause

## 24.10   Agreement Survives if Part is Ruled Illegal

(a)       If any Article or Section of this Agreement or of any Supplements or Riders thereto should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any Supplements or Riders

thereto, or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained shall not be affected thereby.

(b)     If a court of competent jurisdiction decides that any part of this Agreement is illegal, it shall not invalidate the other portions; it being the sole intent and purpose of this Agreement to promote peace and harmony in the craft along lawful lines.

## Article XXV: Agreement and Termination

### 25.10   Effective Date and Termination

This Agreement shall become effective on the 1st day of May, 2016, or the date signed, whichever is later, and shall terminate at midnight, April 30, 2019.  It is mutually agreed, however, that if any Employer signatory or bound to this Agreement desires to terminate this Agreement or to reopen negotiations for a successor agreement to take effect as of the termination date, such Employer must give written notice to the Laborers' International Union of North America, Eastern Region office, of such intention ninety (90) days prior to the termination of this Agreement, otherwise this Agreement is to continue in full force and effect after the termination date of this Agreement from year-to-year. In order for this Agreement to be terminated after the aforesaid termination date, the Employer shall give written notice at least thirty (30) days prior to April 30th of each succeeding contract year and, if said thirty (30) days notice is given, the Agreement shall terminate on April 30th of the contract year following the giving of such notice.  In the case of such continuation, the Employer agrees to be bound by the wage and benefit rate schedules and other terms of any new Agreement(s) made by the Union and the Building Contractors Association of New Jersey.   In the event that an unsigned employer signs this Agreement within the aforementioned ninety day notice period, then and in that event the employer shall continue to be bound to the successor Agreement(s) from year-to-year as set forth hereinabove until such time as a new Agreement is executed by the employer or proper notice of termination is given to the Union by the employer as provided, in which case this Agreement will be terminated in accordance with the terms of this Article.  All termination notices must be made by certified mail with a return receipt to be retained by the sender.  Notice by the Union to reopen negotiations shall be given to the Building Contractors Association of New Jersey and shall serve as notice to all signatories of this Agreement, but shall not relieve the employers of their obligation to give notice to terminate this Agreement as set forth above and, unless such notice is received by the Union as provided, such employers shall be subject to the continuation provisions of this Article.

## Article XXVI: Interpretation of Agreement

### 26.10   Interpretation of Agreement

Any conflict in the interpretation of this Agreement not settled directly by the Employer and the local union shall be submitted to the Building Contractors Association of New Jersey and the Laborers' International Union of North America, Eastern Region office as a representative of the Building and Construction District Councils and Local Unions of the State of New Jersey, for resolution.  If the same is resolved by mutual agreement, said resolution shall be binding on all

parties.  If the foregoing parties fail to agree as to a resolution of the dispute, the dispute shall be subject to the grievance and arbitration procedure herein.

### Article XXVII:  Asbestos and Environmental Remediation Work

**27.00  Asbestos Remediation Laborers' Local 78**
Any asbestos work performed by an Employer or subcontracted by an Employer (or a subcontractor of the Employer) shall be performed by an Employer signatory this Agreement and to Laborers' Local 78.  Demolition work outside of an active containment area (unless an asbestos license is expressly required) shall be assigned to and performed by bargaining unit building laborers covered by the Building, Site and General Construction collective bargaining agreement.

**IN WITNESS WHEREOF,** we the authorized officers of the Employer and the Union have hereunto set forth our hands and seals this _____ day of _____, _____.
<br>Day              Month         Year

**For the Contractor:**

_____
Print Name of Contractor

_____
EIN

By:          _____
Signature

_____
Print Name and Title

_____
Print Street Address

_____
Print City, State, Zip Code

_____
Telephone Number         Fax Number

_____
Email

**For the Building Construction Laborers' District Council and Local Unions 3 & 77 of New Jersey:**

By:          _____
Field Representative Signature

_____
Print Name of Field Representative and Local Union Number

Independent2016CBA.doc

# Exhibit B

# New Jersey Building Laborers Statewide Benefit Funds

3218 Kennedy Blvd., Jersey City, NJ 07306      Phone: (201) 963-0633    FAX: (201) 963-1563

## Employer Trade Agreement Report

| | |
|---|---|
| Name: **INDUSTRIAL CONSTRUCTION of NJ** | EIN: **81-3577584** |
| Address: **833 EWING AVE** | Phone: **(201) 438-5501** |
| **LYNDHURST, NJ 07071** | Fax: **(201) 438-7750** |

### Trade Agreement History

| Trade Agmt | Start | End | Expire | Received | Org | Signed By | Title |
|---|---|---|---|---|---|---|---|
| INDEP-2019 | 5/1/2016 | 4/30/2019 | | 4/24/2018 | 3 | Michele Frisina | President |

### Trade Agreement Image

**Short Form Agreement**

**Building, Site and General Construction Agreement**
(2016)

The undersigned Employer, desiring to employ laborers from the New Jersey Building Construction Laborers Local Unions and New Jersey Building Construction Laborers District Council affiliated with the Laborers' International Union of North America, hereinafter the "Unions," and being further desirous of building, developing and maintaining a harmonious working relationship between the undersigned Employer and the said Unions in which the rights of both parties are recognized and respected, and the work accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties, and the Unions desiring to fulfill the undersigned Employer's requirements for construction craft laborers, the undersigned Employer and Unions hereby agree to be bound by the terms and conditions as set forth in the May 1, 2016 Building, Site and General Construction Collective Bargaining Agreement, which Agreement is incorporated herein as if set forth in full. This Short Form Agreement is not a one job agreement.

Agreed to on __04/24/2018__

For the Employer:

__Industrial Construction of NJ Inc.__
Print Name of Employer

EIN: __81-3577584__

__Michele Frisina__
Signature of Authorized Representative or Agent

__Michele Frisina__          __President__
Print Name                              Title

__833 Ewing Ave__
Print Street Address

__Lyndhurst, NJ 07071__
Print City, State, Zip Code

__201-438-5501__          __201-438-7750__
Telephone Number              Fax Number

E-Mail: __mfrisina@icnofnj.com__

For the Unions:

_____
Local Union Field Representative Signature

__Paul Fallon__  Bus          __3__
Print Name of Field Representative          Local Union Number

# New Jersey Building Laborers Statewide Benefit Funds

3218 Kennedy Blvd., Jersey City, NJ 07306     Phone: (201) 963-0633     FAX: (201) 963-1563

## Employer Trade Agreement Report

Name: **INDUSTRIAL URBAN CORP.**
Address: **833 Ewing Ave**
**Lyndhurst, NJ 07071**

EIN: **46-1091217**
Phone: **(201) 438-5501**
Fax: **(201) 438-7750**

### Trade Agreement History

| Trade Agmt | Start | End | Expire | Received | Org | Signed By | Title |
|---|---|---|---|---|---|---|---|
| ACCNJ-2019 | 5/1/2016 | 4/30/2019 | | 12/6/2017 | | Nicole Frisina | |
| INDEP-2016 | 5/1/2013 | 4/30/2016 | | 11/4/2013 | 77 | Christina Fama | VP |
| INDEP-2013 | 5/1/2010 | 4/30/2013 | | 4/24/2013 | 3 | Christina Fama | Owner |

### Trade Agreement Image



NOV-07-2013 09:47 From:                                          To:2019639194        P.4/10
Nov. 6 2013 10:02AM
11-04-13;11:34AM;                                          Ys: 1789   P. 9
· Oct. 31. 2013 10:53AM                                    :1-201-438-7750    # 2/ 3
                                                           No. 1698   P. 9/10

### Short Form Agreement

#### Building, Site and General Construction Agreement

The undersigned Employer, desiring to employ laborers from the New Jersey Building Construction Laborers Local Unions and New Jersey Building Construction Laborers District Council affiliated with the Laborers' International Union of North America, hereinafter the "Unions," and being further desirous of building, developing and maintaining a harmonious working relationship between the undersigned Employer and the said Unions in which the rights of both parties are recognized and respected, and the work accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties, and the Unions desiring to fulfill the undersigned Employer's requirements for construction craft laborers, the undersigned Employer and Unions hereby agree to be bound by the terms and conditions as set forth in the May 1, 2013 Building, Site and General Construction Collective Bargaining Agreement, which Agreement is incorporated herein as if set forth in full. This Short Form Agreement is not a one job agreement.

Agreed to  11 / 4 / 13

For the Employer:  Industrial Urban Corp
*Print Name of Employer*
EIN:  46-1091217

Christina Fama
*Signature of Authorized Representative or Agent*
Christina Fama          VP
*Print Name*
833 Ewing Avenue
*Print Street Address*
Lyndhurst, NJ   07071
*Print City, State, Zip Code*
201-438-5501       201-438-7750
*Telephone Number*        *Fax Number*
E-Mail:  ChristinaMFama@gmail.com

For the Unions:
*Local Union Field Representative Signature*
John Nolan                  77
*Print Name of Field Representative*        *Local Union Number*

# Exhibit C

**Section 16. INFORMATION TO PARTICIPANTS AND BENEFICIARIES.**  The Trustees shall provide participants and beneficiaries such information as may be required by law.

**Section 17. ACCOUNTANTS AND ACTUARIES.**  The Trustees shall engage one or more independent qualified public accountants and one or more enrolled actuaries to perform all services as may be required by applicable law and such other services as the Trustees may deem necessary.

**Section 18. RECIPROCITY AGREEMENTS.**  The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other pension plans as they determine to be in the best interests of the Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement.

## ARTICLE V

### Contributions to the Fund

**Section 1. RATE OF CONTRIBUTIONS.**  In order to effectuate the purposes hereof each Employer shall contribute to the Fund the amount required by any Collective Bargaining Agreement or other written agreement requiring contributions to the Fund.  The rate of contribution shall at all times be governed by the Collective Bargaining Agreement or other Fund-approved agreement then in force and effect, together with any amendments, supplements or modifications thereto.  Notwithstanding the foregoing, in the event that an Employer is required by applicable law to contribute to the Fund despite the expiration of the Employer's

Collective Bargaining Agreement, that obligation to contribute shall be deemed to also arise under this Trust Agreement.

**Section 2. EFFECTIVE DATE OF CONTRIBUTIONS.**  All contributions shall be made effective as required by the Collective Bargaining Agreement or other Fund-approved agreement and shall continue to be paid as long as the Employer is so obligated by such agreement or by applicable law.

**Section 3. MODE OF PAYMENT.**  All contributions shall be payable and due to the Pension Fund on a monthly basis. and shall be paid in the manner and form determined by the Trustees. More specifically, the contributions owed for each month shall be due on the twentieth (20th) day of the following month.

**Section 4. DEFAULT IN PAYMENT.**  If an Employer fails to make contributions to the Fund when due, the Employer shall be in default and the Trustees, in their discretion, may require the Employer to pay interest on all past due contributions at the rate of one and one-half percent  (1 ½%) compounded per month (or such lesser amount as they may set) from the date when the contributions were due until the date paid.  Further, the Trustees, in their discretion, may require such a defaulting Employer to pay an additional amount equal to twenty percent (20%) of the unpaid contributions as liquidated damages as authorized by applicable federal law.  In addition, the Trustees, in their discretion, may require such a defaulting Employer to pay the expenses incurred by the Fund in collecting contributions, interest or damages, which expenses may include attorneys' and accountants' fees.  The Trustees may take any action necessary or appropriate to

-19-

enforce payment of the contributions, interest, damages, and expenses provided for herein, including, but not limited to, proceedings at law or in equity.  The Fund and Trustees shall not be required to exhaust any grievance or arbitration procedure provided by a Collective Bargaining Agreement or otherwise with respect to the enforcement of such Employer obligations, but rather shall have immediate access to the courts, as provided under applicable law, or to designate a permanent arbitrator to hear and determine collection disputes.  The default of an Employer shall not relieve any other Employer of his obligation to the Fund.

**Section 5. REPORTS AND AUDITS.**  Each employer shall submit to the Fund all reports and documents as the Trustees deem necessary or appropriate to collect or verify contributions.  Each Employer, at the request of the Trustees, shall submit to an audit of the appropriate records of the Employer to verify that the correct amount of contributions or other payments due the Fund has been or will be paid.  Such an audit may include records relating to employees not covered by the Fund to the extent necessary or appropriate to verify contributions.  No use shall be made of information gathered during an audit other than uses relating to administration of the Fund.

**Section 6. PRODUCTION OF RECORDS.**  Each Employer shall promptly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their respective representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed

-20-

necessary to advisable by the Trustees in connection with the proper administration of the Trust Fund. The Union and its Affiliates shall, upon the request of the Trustees, promptly furnish information in respect to an Employee's employment status.

**Section 7. REFUND OF CONTRIBUTIONS.** In no event shall any Employer, directly or indirectly, receive any refund on contributions made by it to the Fund (except in case of a bona fide erroneous payment or overpayment of contributions, to the extent permitted by law), nor shall an Employer directly or indirectly participate in the disposition of the Fund or receive any benefits from the Fund. Upon payment of contributions to the Fund, all responsibilities of the Employer for each contribution shall cease, and the Employer shall have no responsibilities for the acts of the Trustees, nor shall an Employer be obligated to see to the application of any funds or property of the Fund or to see that the terms of the Trust Agreement have been complied with.

## ARTICLE VI

### Plan of Benefits

**Section 1. ESTABLISHMENT OF PLAN.** The Trustees shall formulate and adopt a written plan or plans for the payment of such retirement or pension benefits, death benefits, and related benefits, as are feasible.. The formulation and design of the Pension Plan is committed to the sole discretion of the Trustees, subject only to the requirements that the Pension Plan comply at all times with applicable federal law and regulations and that no provision of the Pension Plan

the Trustees.  All other expenses incurred pursuant to Article IV hereof shall be paid by the Fund.

**IN WITNESS WHEREOF,** the undersigned do hereunto cause this instrument to be duly executed on the day and year first above written.

For the International Union

BY: _____
RAYMOND M. POCINO

For the Employers

BY: _____
JACK KOCSIS, JR.

Union Trustees

BY: _____
RAYMOND M. POCINO

BY: _____
PATRICK C. BYRNE

Employer Trustees

BY: _____
JOSEPH NATOLI

BY: _____
JACK KOCSIS, JR.

-30-

# Exhibit D

| | | |
|---|---|---|
| In the Matter of Arbitration | ) | Before:  J. J. PIERSON, Esq. |
| | ) | Arbitrator |
| Between | ) | |
| | ) | |
| NEW JERSEY BUILDING CONSTRUCTION | ) | |
| LABORERS' DISTRICT COUNCIL ("Union") | ) | |
| on behalf of the | ) | |
| NEW JERSEY BUILDING LABORERS | ) | |
| STATEWIDE BENEFIT FUNDS | ) | |
| ("Funds") | ) n | |
| | ) | |
| -and- | ) | ORDER |
| | ) | |
| INDUSTRIAL URBAN, also doing business as | ) | |
| INDUSTRIAL CONSTRUCTION; | ) | |
| ("Industrial"[1]) | ) | |

The undersigned derives jurisdiction as Arbitrator of this matter by designation pursuant to a "Project Labor Agreement between 36-54 Rector LLC and Essex County Building and Construction Trades Council" ("PLA"), together with the individual "Collective Bargaining Agreement by and between New Jersey Building Construction Laborers' District Council of the State of New Jersey and Building, Site and General Construction Contractors and Employers" ("Laborers Agreement") attached as "Schedule A" to the PLA.

The matter herein is based on the Funds' claim against Industrial Construction for unpaid benefits on the 36-54 Rector Street, Newark, New Jersey project ("Project") in the principal amount of $308,111.13, plus $6,675.73 in interest calculated as one percent above-prime (6.5 percent) for four (4) months from the date of discovery of unpaid principal and first demand for arbitration by the Funds and Industrial's appearance at the April 2019 arbitration hearing and acknowledgment of liability at the August 27, 2019 arbitration hearing. The Funds further sought assessments for liquidated damages and attorney's fees.

An arbitration hearing was conducted on August 27, 2019, Iselin, New Jersey.

Appearing for the Union/Funds
Bradley Parsons, Esq.
Kimberly Kemple, NJBLSF

Appearing for the Employer
Ronald Tobia, Esq.

---

1. The reference to "Industrial" is interchangeable, as both entities are recognized by the parties as one.

## RELEVANT PLA CONTRACT LANGUAGE

### Article 9- Grievance & Arbitration Procedure

**Section 1. Procedure for Resolution of Grievances**

Any question, dispute or claim arising out of, or involving the interpretation or application of this Agreement (other than jurisdictional disputes or alleged violations of Article 7, Section 1) shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below; provided, in all cases, that the question, dispute or claim arose during the term of this Agreement.

### Article 11 - Wages and Benefits

**Section 1. Classification And Base Hourly Rate**

All employees covered by this Agreement shall be classified in accordance with the work performed and paid the base hourly wages rates for those classification as specified in the attached Schedule A, as amended during this Agreement. ....

**Section 2. Employee Benefit Funds**

A. The Contractors agree to pay promptly contributions on behalf of all employees covered by this Agreement to the established employee benefit funds in the amounts designated in the appropriate Schedule A; provided, however, that the Contractor and the Union agree that only such bona fide employee benefits as are explicitly required under N.J.S.A 34:11-56.30 of the New Jersey State Labor Law shall be included in this requirement and paid by the Contractor on this Project. Bona fide jointly trusted fringe benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added if similarly protect under N.J.S.A 34:11-56.30. The Contractor shall not be required to contribute to non- N.J.S.A 34:11-56.30 benefits, trusts or plans.

B. The Contractor agrees to be bound by the written terms of the legally established Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds; but only with regard to work done on this Project and only for those employees to whom this Agreement requires such benefits Payments.

C. *Should any Contractor become delinquent in the payment of contributions to the fringe benefit funds, then the subcontractor at the next higher tier, or upon notice of the delinquency claim from the Union or the Funds, agrees to withhold from the subcontractor such disputed amount from the next advance, or installment payment for work performed until the dispute has been resolved.* (Emphasis added by this Arbitrator)

-2-

*Delinquency disputes between a benefit fund and a contractor shall be submitted to binding arbitration under this Agreement.* The arbitrator shall render an opinion and award on the disputed delinquency with three (3) days of the close of the hearing. The CPM agrees that upon written notice from the fund enclosing a copy of the arbitrator's opinion and award, it will withhold up to the amount of the Award from any monies then due or thereafter to become due to the Contractor, and will pay same to the Fund. The CPM shall have no other involvement in or responsibility for any aspect of any delinquency dispute involving contractors. This provision shall not be construed as creating a debt or any other liability on the part of the CPM to any Union or fund for any delinquency payable by a Contractor.

## BACKGROUND

The Funds also provided notice to Gilbane Residential Construction, Inc., the Construction Manager and Contractor at the next higher tier to Industrial that Industrial violated the PLA by failing to remit benefit contributions when due to the Funds for work performed under the PLA.

## FINDINGS

1. On November 21, 2018, the Funds settled a demand for payment of delinquent benefit contributions of Industrial with Rector Street Project GC, Gilbane Residential. At that point, pursuant to a demand advanced under the Rector Street PLA, specifically, Article 12, Gilbane paid $222,706.33 to the Funds for Industrial's then known fringe benefit delinquency on the Project. As part of the settlement, the Funds released claims against Gilbane for Industrial's work on the Project;

2. Subsequent to November 21, 2018, following the Funds' review of shop steward reports remitted late, together with remittance reports and payroll documentation provided by Industrial along with the Gilbane payment, the Funds discovered an additional $308,111.13 in delinquent fringe benefits owed by Industrial for work performed by Laborers on the Rector Street project for the period of January 9, 2018 through April 17, 2018.

3. The Funds provided evidence through shop steward summary reports, establishing the amount due and owing the Funds from Industrial for delinquent contributions.

4. At the arbitration hearing of August 27, 2019, Industrial's Counsel acknowledged liability and the amount due the Funds.

5. The Funds noticed Industrial Construction of NJ of Industrial Urban's Rector Street Project delinquency ($308,111.13) on April 2, 2019. The arbitration was noticed under the Laborers Agreement of which both Industrial Construction of NJ and Industrial Urban are signatory.

6. Article XV, <u>Collection of Amounts Due Under the Agreement</u> states:

15.20 Legal Remedies for Collection of Delinquencies. The Trustees or Administration of any fund due contribution pursuant to this Agreement shall be entitled all rights accorded by law including but not limited to the right to demand, receive, sue for, and take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy that may be necessary or desirable in their discretion to effectuate the payment and collection of any sum or sums and costs required to be paid to the Welfare, Pension or Annuity Funds under this Agreement.

15.30 Costs of Collection.

(a) In addition to the other provisions of this Agreement relating any such funds, in the event the Employer is delinquent in the payment of contributions to the Funds, or wages, the delinquent Employer shall also be required to pay attorneys' fees and court and arbitration costs, if any, whenever the services of an attorney or arbitrator are necessary to recover the amount due. The Union or the Trustees, in their discretion, may also assess the Employer with interest at the current rate.

15.50 Fund Rights and Duties.

( c) The Employers agree that the trustees of the fund or funds shall have the right to require such reports by the Employers as are necessary to the fulfillment of the agreements and declarations of trusts and the contracts of insurance, as may apply. The trustees and insurers shall also have the right to inspect at all reasonable times the payroll, employment and such other records of the Employer as are pertinent to questions of the accuracy or comprehensiveness of the reports of the Employers.

7. Industrial Construction of NJ appeared at the April 23, 2019 arbitration hearing by phone appearance of Counsel.  During the hearing, Industrial acknowledged its liability for the benefits, beginning the Rector Street project as Industrial Urban, then finishing the project as Industrial Construction. Counsel further acknowledged that the two entities were the same and acknowledged liability for the delinquency. However, Counsel requested time and a meeting with the Funds to review proofs as to damages and to verify the amount due.

8. On August 15, 2019, Funds' Counsel met with Industrial's Principal and Counsel, reconciled proof of the delinquency amount and demonstrated that, notwithstanding the November 2018 Gilbane payment, $308,111.13 remained outstanding, due and owing the Funds.

9. At the August 27, 2019 arbitration hearing, Industrial's Counsel acknowledged the amount of $308,111.13 was due and owing the Funds.

Based on the record, this Arbitrator finds that Industrial Urban Corp., also known on the 36-54 Rector Street Project (Newark, NJ) as Industrial Construction of N.J., Inc., violated the PLA and the Schedule "A" (Laborers' Agreement) by failing to remit fringe benefit contributions on behalf of Laborers performing work on the 36-54 Rector Street Project during the work period of January 9, 2018 through April 17, 2018 and, as of the date of the hearing, was liable to the Funds for delinquent benefit contributions in the amount of $308,111.13.

* * * * * * *

In consonance with the proof, and with evidence in support of findings above, this Arbitrator hereby renders the following:

## AWARD

1. **Industrial Urban Corp. dba Industrial Construction of N.J** violated the Project Labor Agreement and the Schedule "A" Laborers' Agreement covering the 36-54 Rector Street Project (Newark, New Jersey) by failing to remit fringe benefit contributions in the amount of $308,111.13 on behalf of Laborers performing work on the 36-54 Rector Street Project during the work period of January 9, 2018 through April 17, 2018.

It is therefore **ORDERED**, that:

1. **Industrial Urban Corp. dba Industrial Construction of N.J** shall make payment to the "New Jersey Building Laborers' Statewide Benefit Funds" in the total amount of **$308,111.13**, plus interest, and forward payment to "NJBLSBF - Delinquency Department", 3218 Kennedy Blvd., Jersey City, NJ 07306 - Attn: Kimberly Kemple; with a copy of the check forwarded to the Funds' Counsel: "KROLL, HEINEMAN, CARTON, LLC", Metro Corporate Campus I, 99 Wood Avenue South - Suite 307, Iselin, New Jersey 08830; attn: Albert G. Kroll, Esq.

2. This Arbitrator shall retain jurisdiction of this matter in the event of any dispute or any issue relating to or arising from the interpretation or application this Order.

Dated: October 19, 2019
Short Hills, New Jersey
STATE OF NEW JERSEY:

J. J. PIERSON, Esq., Arbitrator

COUNTY OF ESSEX    :

    I, J. J. PIERSON, Esq., on my oath, do certify to being the person who has executed the foregoing instrument and issued the above Award on for delivery on October 19, 2019.

**Bradley M. Parsons, Esq.**
Kroll Heineman Carton
99 Wood Avenue South - Suite 307
Iselin, NJ   08830

**Ronald Tobia, Esq.**
Chiessa Shahinian Giatomosi
One Boland Driver
West Orange, NJ 07052

**Michael P. Davis, Senior Legal Counsel**
Gilbane Building Company
88 Pine Street
New York, NY  10005

_____
J. J. Pierson, Attorney at Law - State of New Jersey

-6-